[Sac. No. 5160. In Bank.—March 24, 1938.]

EVELYN E. DRYDEN, Respondent, v. CONTINENTAL BAKING COMPANY (a Corporation) et al., Appellants.

34

Harry J. Colding, Theodore Hale and Carroll B. Crawford for Appellants.

Schell & Delamar and Earle M. Daniels as *Amici Curiae*, on Behalf of Appellants.

Clifford A. Russell and A. M. Mull, Jr., for Respondent.

WASTE, C. J.—This was an action for damages for personal injuries to plaintiff alleged to have resulted from eating bread manufactured by defendants and in which particles of glass were imbedded. In the original complaint it was alleged that the bread had been purchased by plaintiff. During the trial, it developed that plaintiff's husband was the actual purchaser, and it was ordered that the complaint be amended to conform to the proof in that respect. The amended complaint set forth two causes of action, one based on breach of warranty and the other charging negligence, and prayed for damages in the sum of $20,000. Defendants' answer denied the allegations of the complaint, and set up a defense of contributory negligence. The trial court found that there was a breach of implied warranty running to plaintiff, and that defendants were guilty of negligence as alleged, and awarded plaintiff damages in the amount of $750. From that judgment defendants appeal, claiming that the findings of the trial court are not supported by the evidence.

In December of 1933, Dr. Dryden, respondent's husband (respondent being present), purchased at a neighborhood grocery store, for consumption by himself and his family, a loaf of wrapped, sliced rye bread baked by appellants. A portion of the loaf was served at respondent's table that evening, and was found to contain what was assumed to be grit. The bread was served toasted for breakfast the following morning, when it was again found to contain some gritty substance. The respondent testified that she ate one slice of the bread at the evening meal and two or three slices of the toast in the morning, prior to the discovery by her husband, on eating some of the toast, that the supposed "grit" was glass. Appellants assert that the bread contained caraway seeds, and that the gritty substance may have been these seeds and not necessarily glass. Upon discovering the "glass" in the bread he had partly masticated, respondent's husband expelled that portion from his mouth and submitted it, with the remainder of the loaf—possibly eight slices still in the original cellophane wrapper—and several slices of the toasted bread, to a chemist for examination. At the trial, the expert testified that he "made one composite sample composed of a portion of each of these slices. . . . So the sample examined was a composite sample of all the remaining slices of bread in the package." A separate analysis was made of the toasted

bread and likewise of the portion that had been partially masticated, and particles of glass were found in each sample examined.

 Appellants contend that, since glass was not found in every slice of the bread, the finding of the trial court that plaintiff actually swallowed glass is unsupported by the evidence. In view of the report of the chemist and of the fact that respondent, as well as other members of her family who partook of the bread, detected the ''gritty substance'', which her husband found to be glass, it is reasonable to assume that respondent did actually swallow glass in the bread eaten by her, and the trial court was justified ·in so finding. It is elementary, of course, that all reasonable inferences and assumptions must be indulged in to support the judgment.

 It was alleged in the complaint that, as a result of eating the bread containing glass, plaintiff suffered the following injuries: Nervous shock, mental suffering and agony, inflammation of the stomach and intestines, and sharp cutting pains in the region of the stomach and intestines, which allegation the lower court found to be true. Appellants attack this finding on the ground that the record contains no evidence that respondent ever suffered physical or other actionable injury from the presence of glass in her system, and that her own physician testified he could not detect any glass in her system. Respondent's testimony discloses that, within a day or so after eating the bread, she suffered from indigestion and abdominal pains that continued for some months; that she had been working in an office and was unable to carry on this work continuously; that she worried and was unable to eat; she became nervous and irritable and lost weight, and the trouble finally resulted in chronic indigestion. Dr. Dryden testified as to the change in his wife's physical condition after eating the bread. ''She gradually got worse up until about two ·weeks before she developed a regular chronic indigestion with acute pains in her stomach, and she was in ill health for a great many months afterward.'' This testimony is corroborated by that of her physician, Dr. Jones, who stated that when called by respondent's husband to examine her he found her in a ''very nervous state'', and that she complained of the irritation of the stomach and of indigestion, although at the time he could find no evidence, ''from an outside examination'', that she had swallowed glass.

He also testified that "she had intestinal irritation due to her lack of eating properly . . . her resistance was lowered and on several occasions she was quite sick". This condition continued until respondent (in July or August of 1934) was compelled to undergo an operation due to other causes. Following the operation, during which he had examined the wall and lining of the stomach and intestines, Dr. Jones assured respondent that he could find no injury to the intestines caused by swallowing the glass, whereupon respondent's health began to improve. Dr. Turner, whose offices adjoined those of Dr. Dryden, testified that he had known respondent, who was her husband's assistant or nurse, for a year and a half or two years prior to December, 1933; that subsequent thereto he noticed a change in her physical condition; that she was unable to do the office work and was "continually on the couch, complaining of intestinal pains"; that she rarely went to lunch, and told him she was unable to "keep meals on her stomach"; and that she was extremely nervous and irritable. In view of this and other corroborating testimony, the finding of the trial court that plaintiff suffered the injuries complained of was amply supported.

■ In objecting to the finding of the lower court that there was a breach of implied warranty, appellants urged that it is indispensable to such an action that there be privity of contract, and as respondent's husband was the actual purchaser, there was no such privity and therefore there was no implied warranty to respondent as to the character or quality of the bread sold, citing the case of *Binion* v. *Sasaki*, 5 Cal. App. (2d) 15 [41 Pac. (2d) 585]. In view of our conclusion that the evidence supports the finding that appellants were negligent, we do not find it necessary to determine whether a wife may recover in an action *ex contractu* for breach of an implied warranty in the sale of foodstuffs made to her husband. Assuming that privity is an essential element of such an action, it might well be urged that the wife, under the circumstances here disclosed, was a third party beneficiary of the contract. It is a well-settled rule that one not a party to an implied warranty in the sale of foodstuffs may recover in tort in the event negligence be shown. (17 A. L. R. 709; 39 A. L. R. 1000; 42 A. L. R. 1255; 60 A. L. R. 371.)

■ Appellants urge that they were not guilty of negligence. They assert that more than ordinary care was ob-

served in their bakery to protect bread from broken glass, and that the law has no fixed standard of care other than the general one that it must be such as a person of ordinary reason, prudence and caution would use under the same circumstances, citing 19 California Jurisprudence, page 577, and the numerous cases there set forth. An examination discloses that these cases are not factually in point. In an action for damages for personal injuries caused by broken glass in a package of rolled oats purchased as food by plaintiff, the court, in passing upon the question of negligence, said: "It goes without saying that any food manufacturer intending his product for human consumption should exercise a very high degree of care to see that it is free from any foreign substance which, if swallowed, might cause bodily injury or death to the consumer. Fortunately such care is the usual rule. . . . However, in the process of manufacture, the most careful hand may become careless; a moment's inattention may allow some foreign substance of a harmful character to become mixed with the food, and in a large plant with numerous employees there are many opportunities for acts of negligence. The various steps in a system of manufacture, of course, are wholly under the control of the manufacturer. . . .

"In view of the above considerations, it seems only fair to presume that the presence of deleterious substance in a packaged food occurs through some negligent act of omission or commission on the part of the agents of the manufacturer." (*Linker* v. *Quaker Oats Co.*, 11 Fed. Supp. 794, 796.) See, also, *Rozumailski* v. *Philadelphia Coca-Cola Bottling Co.*, 296 Pa. 114, 116 [145 Atl. 700], holding that those engaging in the business of manufacturing food for consumption must use a high degree of care to see that the food is free from deleterious substances which may injuriously affect the user, and that even where all reasonable scientific methods are employed to obviate the presence of any injurious substances, "where such substances get into the product, whose presence there might possibly be due to that uncertain human quality, —carelessness,—somewhere along the line, the manufacturer is responsible to a member of the public injured thereby."

The next contention of appellants is that where the doctrine of *res ipsa loquitur* is not claimed to apply, as in the present case, a defendant may not be held "guilty of

negligence without proof of any specific negligent act or omission and in the presence of affirmative proof that defendant was guilty of no negligent act". In *Rozumailski* v. *Philadelphia Coca-Cola Bottling Co.*, *supra*, plaintiff swallowed glass which he testified came from a bottle of coca-cola served to him at a restaurant. The points chiefly urged on appeal were that the evidence was insufficient to prove negligence and that the lower court invoked the doctrine of *res ipsa loquitur* to sustain the action. The court held that "the manufacturer was for all purposes in exclusive control of the bottle and its contents, as its contents were undisturbed until it reached the consumer's hands. *It is a case where the accident proves its own negligent cause,*" and negligence could be inferred "from the fact that ground glass had been found in the bottom of the bottle. The particular dereliction is not shown, nor was it necessary; the negligent act is demonstrated by showing glass in the bottom of the bottle." (Italics added.) It is our opinion that the trial court was correct in finding appellants guilty of negligence.

■ The issue of contributory negligence as the proximate cause of the injury was properly disposed of by the trial court. Appellants' contention that respondent was highly negligent in continuing to masticate and swallow the bread after discovering the gritty substance therein, showing thereby a want of ordinary care (sec. 1714, Civ. Code), is without merit. This was obviously a question of fact for the trial court. (See, particularly, *Ternay* v. *Ward Baking Co.*, 167 N. Y. Supp. 562.)

■ Another objection of appellants is directed to the right of the respondent to recover for mental suffering without physical injury. As we have already held that the trial court was warranted in finding that plaintiff suffered the injuries complained of, this contention needs no discussion. Furthermore, even were the injuries confined to nervous shock, the right to recover for subsequent disturbances of the nervous system is settled by the decision in *Sloane* v. *Southern Cal. Ry. Co.*, 111 Cal. 668 [44 Pac. 320, 32 L. R. A. 193], where this court said (p. 680) : "Whatever may be the influence by which the nervous system is affected, its action under that influence is entirely distinct from the mental process which is set in motion by the brain. The nerves and nerve centers of the body are a part of the physical

system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves or the entire nervous system is thus affected, there is a physical injury thereby produced, and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect through some action upon the mind.'' (See, also, *Lindley* v. *Knowlton*, 179 Cal. 298 [176 Pac. 440].) Definite nervous disturbances or disorders, caused by mental shock, excitement, and so on, are classed as physical injuries. (8 Cal. Jur., p. 772, citing the two cases last mentioned.)

The judgment is affirmed.

Shenk, J., Houser, J., Seawell, J., Curtis, J., and Langdon, J., concurred.