Letha Sullivan, Appellee, v. Coca Cola Bottling Company of Chicago, Inc., Appellant.

Gen. No. 41,965.

Opinion filed March 18, 1942.

W. Harold Rutherford, of Chicago, for appellant; Richard E. Keogh, of Chicago, of counsel.

Robert Irmiger, of Chicago, for appellee; James J. Cusack, Jr. and John F. Cusack, both of Chicago, of counsel.

Mr. Presiding Justice Burke delivered the opinion of the court.

In a complaint filed in the superior court of Cook county, Letha Sullivan sought damages for personal injuries suffered on February 2, 1940, when she purchased and drank a bottle of Coca Cola, containing a foreign substance which rendered the Coca Cola unfit for human consumption. Defendant's answer traversed the material allegations of the complaint. A trial before the court and a jury resulted in a verdict against the defendant for $750. Motions for a directed verdict, a new trial and in arrest of judgment were overruled and judgment was entered on the verdict, to reverse which this appeal is prosecuted. Defendant asserts that the mere fact that an accident resulting in an injury has occurred does not authorize the presumption or inference that it was negligent and that it was plaintiff's duty to show by competent testimony that the foreign substance alleged to have been found in the bottle might or could be injurious. Plaintiff answers that defendant was negligent and breached its implied warranty by offering to plaintiff a drink containing a foreign object; that plaintiff became ill im-

mediately after drinking the Coca Cola, and that whether or not the Coca Cola caused her illness was a question of fact for the jury.

On February 2, 1940, plaintiff, a married woman 42 years of age, went to the Wedgewood Pharmacy at 64th street and Woodlawn avenue, Chicago. The proprietor, David Levy, a pharmacist, waited on her. She purchased a bottle of Coca Cola. Levy has been a druggist for 23 years and has occupied the store at 64th street and Woodlawn avenue for about 4 years. Plaintiff came to the drug store almost every day for a period of three or four years and on each occasion purchased and drank a bottle of Coca Cola. She always bought bottled Coca Cola. When Levy served it to her, he opened the bottle, poured the contents into a glass and placed the glass on the fountain counter. At about 2:30 p.m. on the afternoon of February 2, 1940, Levy poured the contents of a bottle of Coca Cola into a glass. Plaintiff took a drink from it and noticed that it did not taste right and that it had a metallic taste. She then purchased a package of cigarettes from the druggist. She lit a cigarette and took a puff. She thought she might be imagining the metallic taste in the Coca Cola, which was the reason why she smoked the cigarette. She again picked up the glass, took another sip and found that it had the same taste. After drinking the Coca Cola she became very ill and suffered nausea. She testified that the druggist picked the bottle up from behind the soda fountain and held it up, at which time she saw there was something in the bottom of the bottle. She started for the door, and as she reached it, vomited in the doorway. She went home and to bed. She was very ill. When her husband came home from work that evening he called Dr. Raymond Thoma, who attended her at home. When the doctor called she was very sick to her stomach and nauseated. On the following day her face and forehead broke out and she had dysentery. She was nause-

ated continuously until February 10th. She could not do her housework and had to remain in bed most of the time. She felt dizzy. The only thing she could eat was toast and tea. She tried to drink orange juice and it made her sick. On February 10, 1940, she visited the doctor at his office. She was quite sick for 18 days. The first week of her illness was the worst. She saw Dr. Thoma about her illness on the average of once every two or three months up to the time of the trial, which began on June 10, 1941. He gave her medicine and treatments for her nerves. He also gave her "shots in the arm" for her nervous condition. Prior to February 2, 1940, she had never been sick from drinking Coca Cola. She testified that she became sick "right away after I tasted the Coca Cola." She did not become sick until she drank from the contents of the Coca Cola bottle. She had not suffered from any stomach trouble before. On cross-examination, she was asked as to what her doctor told her, and she answered, "he told me that the Coca Cola did make me sick." The bottle was admitted in evidence and contained the metallic base of an automobile electric light bulb. Another bottle of Coca Cola opened by the druggist at the same time, tasted "all right." The testimony of the druggist, David Levy, corroborated that of plaintiff. He testified that he drank from the bottle; that after drinking from it he became sick and had to take a dose of milk of magnesia; that he vomited; that he saw in the Coca Cola bottle from the contents of which plaintiff and himself had been drinking, part of an electric light bulb; that he kept the bottle of Coca Cola with the foreign substance in it from the time of the happening of the accident until about two weeks before the trial, when he delivered it to her for use in the trial. Counsel for plaintiff stated that the attending physician, Dr. Thoma, would testify. He did not arrive and the case was submitted to the jury without his testimony. Defendant introduced Henry A. Dirksen, who has been superintendent of its plant for 15

years. He testified that he is and was in complete charge in February 1940 of all the bottling operations of defendant. With the aid of pictures he described how Coca Cola is bottled and what precautions are taken to guard against foreign substances. He testified that the coloring used in Coca Cola is burnt sugar; that in the bottling of Coca Cola charged water is put into the bottle, which was charged with $CO_2$ gas; that the empty Coca Cola bottles are refilled; that the empty bottles arrive at the plant containing cigarette stubs, matches, pencils, paper wadded into the bottles, and other things; that the bottles are placed in an automatic bottle washer in the condition in which they are received at the plant and the aforementioned articles are washed out by this machine. He further stated that as the bottles leave the washer an employee inspects them at the rate of 8400 per hour; that the inspector discards broken bottles; that if the inspector should miss something in the bottle, there is no one else to catch it before it is bottled, and that each individual bottle is not inspected after it is filled.

The jurors had before them the undisputed testimony that plaintiff had been drinking a bottle of Coca Cola in Levy's Drug Store almost every day for three years; that she never became ill from drinking such Coca Cola; that she had enjoyed good health; that on February 2, 1940, she became ill after drinking a bottle of Coca Cola; that the druggist observed that she became ill; that he also drank from the contents of the same bottle and that he became ill; that the Coca Cola had a metallic taste; that the bottle contained the metallic base of an automobile electric light bulb; that she started to go home and vomited; that the druggist also vomited; that she went home and took to bed; that she was attended by a physician that evening; that she was nauseated for a considerable period of time; that she had dysentery; that she suffered from headaches; that her face broke out and that she was suffering from the same complaint at the time of the

trial. The testimony of the druggist corroborated that of plaintiff. He testified that he purchased all of his bottled Coca Cola from defendant and that the empty bottles were returned to defendant. Defendant introduced the testimony of its plant superintendent, who exhibited photographs showing the operation of cleaning, sterilizing and bottling. From his testimony it appears that bottles returned to be refilled frequently contain foreign substances. These bottles are placed in an automatic washer and pass before an employee who inspects them at the rate of 8400 an hour. He discards broken bottles. Should he miss seeing a foreign substance in a bottle, there is no one else to catch it before it is bottled. The bottles are again inspected after they are filled, but each bottle is not individually inspected.

Defendant cites the case of *Rotche v. Buick Motor Co.*, 358 Ill. 507, for the proposition that the mere fact that an accident resulting in an injury has occurred, does not authorize a presumption or inference that the defendant was negligent, and that the burden is upon the plaintiff to prove by competent evidence that defendant was guilty of negligence. Defendant leans heavily on the case of *Bowman v. Woodway Stores*, 345 Ill. 110. We are of the opinion that the two cases relied on by defendant are not applicable to the factual situation before us. The testimony of plaintiff and the pharmacist shows that her illness was caused by the contents of the bottle of Coca Cola. This bottle contained in addition to the Coca Cola, the metallic base of an automobile electric light bulb. The jury had a right to infer that the metallic taste which sickened plaintiff was caused by this foreign substance. Mr. Levy's testimony establishes that the bottle of Coca Cola was purchased from the defendant. Defendant knew that it would be resold to the general public. While Dr. Thoma did not testify, the record shows that in answer to a question propounded by counsel for the

defendant, plaintiff stated that "he [Dr. Thoma] told me that the Coca Cola did make me sick." While this was hearsay, it was brought out by the defendant and the jury had a right to consider it. We are satisfied that the testimony presented a question of fact for the jury.

Defendant also complains that the court erred in refusing to instruct the jury that "while the law permits a plaintiff in a case to testify in her own behalf, nevertheless the jury have a right in weighing her evidence and determining how much credence is to be given to it, to take into consideration the fact that she is the plaintiff and that she is interested in the result of the suit." Defendant argues that this instruction should have been given, particularly in view of the fact that plaintiff's testimony was supported only by the testimony of the druggist. Plaintiff calls our attention to an instruction which she asserts covered the substance of the refused instruction. This instruction reads: "However, you may consider the number of witnesses testifying on either side of any fact or issue; the interest or bias of any witness as a party to the suit or otherwise; the appearance and demeanor of the witness while on the stand, and the probability or improbability of their testimony." The part of this instruction which tells the jurors that they may consider the interest or bias of any witness as a party to the suit or otherwise, is substantially the same as the instruction requested by defendant. We agree with plaintiff that the instruction last quoted informed the jurors that they could consider the interest or bias of the plaintiff, and that this instruction was substantially the same as the one tendered by the defendant. Therefore, the refusal to give the instruction tendered by the defendant did not constitute error.

For the reasons stated, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.