[Civ. No. 6664. Third Dist. Mar. 18, 1943.]

JOHN MEDEIROS, Respondent, v. COCA-COLA BOT-TLING COMPANY OF TURLOCK, LTD. (a Corporation), Appellant.

Hawkins & Hawkins & Cardozo for Appellant.

Gregory P. Maushart and Thomas C. Boone for Respondent.

ADAMS, P. J.—Defendant appeals from a judgment in favor of plaintiff for damages in the sum of $500 sustained

by reason of personal injuries resulting from drinking a bottle of Coca-Cola manufactured by defendant.

Plaintiff's complaint, which was in two counts, alleged in the first count that defendant was engaged in the business of bottling, selling and distributing Coca-Cola which it sold and distributed to various dealers for the purposes of resale to the general public; that plaintiff had purchased a bottle of Coca-Cola from a dealer in Stanislaus County, which had been bottled by defendant and sold and delivered by it to said dealer; that defendant was careless and negligent in the bottling of said Coca-Cola in that defendant had permitted to remain in said bottle a cleaning brush used by defendant in cleaning bottles, and that said bottle had been sealed by defendant with said cleaning brush enclosed and delivered in that condition to the dealer from whom plaintiff had bought it; that plaintiff "drank a portion of the contents of said bottle of Coca-Cola in which bottle the defendant permitted a cleaning brush to remain, and by reason of the plaintiff drinking a portion of the contents of said bottle as aforesaid he became violently ill and was rendered sick, sore and disabled"; also that by reason of the aforesaid facts it had been necessary for plaintiff to secure the services of a physician for which he had incurred a reasonable indebtedness of $150; and that "by reason of the premises and as a direct and proximate result of the carelessness and negligence of the defendant," plaintiff had been damaged in the sum of $7,500, no part of which had been paid by defendant.

In the second count plaintiff incorporated by reference portions of the first count and then alleged "that the defendant warrants the beverages which it bottles, sells and distributes and particularly the drink known as Coca-Cola as being pure and wholesome, free from all impurities and fit for human consumption"; that plaintiff was unaware that the bottle of Coca-Cola delivered to him contained the said cleaning brush or other foreign substance "and all times relied upon the expressed and implied warranty of the defendant that the said bottle of Coca-Cola was pure and wholesome, free from all impurities and that it was fit for human consumption"; that by reason of leaving the cleaning brush in said Coca-Cola the contents of same became contaminated and unfit for human consumption; that plaintiff drank a portion of the bottle of Coca-Cola in which the defendant permitted the cleaning brush to remain, "and by reason of the plaintiff

drinking a portion of the contents of said bottle as aforesaid, he became violently ill and was rendered sick, sore and disabled''; also, ''that by reason of the premises and as a direct and proximate result of the breach of warranty by the defendant, plaintiff has been damaged in the sum of $7500.00.''

Defendant filed no demurrer to said complaint, but answered denying generally the allegations thereof; and as special defenses set up that plaintiff's injuries, if any, were caused by an unavoidable accident, that plaintiff was negligent and did not use ordinary care in the purchase and consumption of the Coca-Cola, and that such negligence and want of ordinary care contributed proximately to his injury, if any; also that defendant did not warrant to plaintiff any Coca-Cola as being pure, or wholesome, or free from all impurities, or fit for human consumption.

The case was tried before a jury, and at the close of plaintiff's testimony defendant moved for a nonsuit upon the second (warranty) count of the complaint upon the ground that plaintiff had failed to support the allegations thereof in that there was no evidence that the contents of the bottle were unfit for human consumption; and upon the first (tort) count upon the ground that it did not state a cause of action in that there was nothing to show a causal connection between the negligent leaving of the brush in the bottle, and the drinking of the Coca-Cola, and defendant's becoming ill. Defendant's motion was denied. After verdict for plaintiff, defendant moved for a new trial upon all of the statutory grounds, which motion was also denied.

On this appeal it is contended by appellant that the judgment should be reversed because the court erred in refusing to grant a nonsuit (a) as to the tort action because the complaint did not state a cause of action and the evidence was not sufficient to support a verdict, (b) as to the action for breach of warranty because the evidence was not sufficient to support a verdict. Also that the evidence was not sufficient to support a verdict, that the court gave the jury erroneous instructions, and gave conflicting instructions on material issues. We shall consider these contentions in the order in which they are presented by appellant.

As to whether a nonsuit should have been granted on the first cause of action, the record shows that the only ground upon which defendant's motion was predicated was that a

cause of action is not stated, it being urged that the mere fact that a person after drinking a bottle of Coca-Cola with a brush in it becomes ill is not sufficient to state a cause of action; that there must be something to show a causal connection between the negligent leaving of a brush in the bottle and drinking the Coca-Cola and becoming sick. On said motion it was not urged as to this count that the evidence was not sufficient to support a verdict.

We cannot say that said count failed to state a cause of action. Defendant did not demur to the complaint, and we note that as to the second count counsel for defendant stated to the trial court that it was not demurrable "on its face," but showed a "good cause of action"; and the allegation therein as to the effect of plaintiff's drinking the Coca-Cola was the same, to wit: That "by reason of the plaintiff drinking a portion of the contents of said bottle as aforesaid he became violently ill and was rendered sick, sore and disabled." If the allegation was sufficient in the one count, it was sufficient in the other; and had defendant desired a fuller statement it could have demurred on the ground of insufficiency. In the absence of a special demurrer the allegations are sufficient to constitute a cause of action, and the court properly denied the motion for nonsuit on that ground.

As to the contention of defendant on its motion for a nonsuit under the second count, that the evidence was insufficient to support the allegation that the contents of the bottle were unfit for human consumption, that the presence of the cleaning brush in the Coca-Cola did not make it so unfit, and that there was, therefore, no breach of the implied warranty that the drink was "reasonably fit" for human consumption, it is urged that the liquid itself was not contaminated by the presence of the brush and that, though seeing the brush in the bottle (which plaintiff thought was a spider) caused a shock which made plaintiff ill, the product was nevertheless fit for human consumption and there was no breach of the implied warranty that the beverage was "reasonably fit" for the purpose for which it was required. (Sec. 1735, Civ. Code.) We are not impressed with this contention, nor do we believe that it can be said with reason that a beverage containing a cleaning brush or other similar foreign object or substance is "reasonably fit" for beverage purposes. An analysis of the contents of the bottle of Coca-Cola in controversy, made by defendant's own witness, showed that it

contained traces of ferric and zinc phosphate from the metal on the brush, sufficient to give it a bitter taste.

In *Delta Nehi Bottling Co.* v. *Lucas,* 184 Miss. 693 [185 So. 561], a bottle of R. C. Cola purchased by plaintiff contained a metal object having the appearance of a corroded paper clip covered with a greenish substance. After drinking a portion of the contents plaintiff discovered the object and was thereupon seized with vomiting, etc. At the trial her physician disclaimed any knowledge that the foreign substance in the bottle was actually poisonous, and averred that it was the drink in the condition in which it appeared to be which caused a gastric upset and became the contributing cause of an aggravation of pyelitis to which plaintiff was subject. There was medical testimony that a normal person would sometimes become nauseated when seeing a disgusting object in a container from which he had drunk, a fact which the court said a jury would know without medical testimony. And it was there held that the evidence was sufficient to sustain the verdict of the jury in favor of plaintiff. The court also held in that case that if the conduct of the warrantor of a drink for human consumption is a substantial factor in bringing about harm to another, the fact that the warrantor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred, does not defeat liability; and that a negligent warrantor of a drink may be liable for harm to another although the physical condition of the other makes the injury greater than that which the actor as a reasonable man should have foreseen.

In *Coca-Cola Bottling Co.* v. *Jenkins,* 190 Ark. 930 [82 S.W. 2d 15], where plaintiff drank part of a bottle of Coca-Cola which contained a decomposed cockroach, it was urged by defendant upon appeal that one of the instructions of the trial court was erroneous in that it assumed that the contents of the bottle were poisonous and unwholesome—a matter in controversy; but judgment for plaintiff was affirmed.

In *Carbone* v. *California Packing Corp.* (N. J.), 169 A. 866, a judgment for plaintiff was affirmed in a case where it was shown that plaintiff became ill after eating part of a can of peaches put up by defendant which contained a medicated finger bandage of gauze impregnated with some drug, though it was not shown that the portion of the contents eaten by plaintiff was itself unfit for human consumption.

In *Fisher* v. *Washington Coca-Cola Bottling Works,* 84

F.2d 261 [105 A.L.R. 1034], a bottle of Coca-Cola sold to plaintiff contained a moldy substance, spongy and soft. Plaintiff, after drinking a portion of the beverage, became ill. The Court of Appeals for the District of Columbia reversed a directed verdict for defendant, saying that the case should have been submitted to the jury; that it was not distinguishable from *Chevy Chase Dairy* v. *Mullineaux*, 71 F.2d 982, where broken glass was found in a bottle of milk, even though broken glass is harmful to the human body, while the foreign body found in the Coca-Cola was not shown to have been harmful.

In *Coca-Cola Bottling Works of Evansville* v. *Williams*, —— Ind.App. —— [37 N.E.2d 702], a bottle of Coca-Cola containing concrete was sold to plaintiff, and illness resulted from drinking same, culminating in nervous gastritis. A judgment for plaintiff was sustained though it was not shown that the concrete rendered the Coca-Cola itself unfit for human consumption.

In *Sullivan* v. *Coca Cola Bottling Co. of Chicago*, 313 Ill. 517 [40 N.E.2d 579], a bottle of Coca-Cola sold to plaintiff contained the metallic base of an automobile electric light bulb, and after drinking a portion of the bottle plaintiff became ill. There was no evidence that the metal had actually contaminated the Coca-Cola, but the case was held to be one for the jury.

We also note that though in *Reese* v. *Smith*, 9 Cal.2d 324 [70 P.2d 933], it was held that the presence of maggots on sausage did not prove that the sausage itself was filthy, decomposed and unfit for human consumption, and that maggots themselves are not poisonous, that in *Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272, 282 [93 P.2d 799], the court said that it should at once be apparent that food which is covered with maggots is not wholesome nor fit for human consumption, and that if plaintiff partook of a sandwich so infested and became ill, there was abundant authority for the affirmation of a judgment for damages in such case either on the theory of negligence or on that of implied warranty under section 1735 of the Civil Code.

Plaintiff testified that on taking the Coca-Cola he found it to have a bitter taste, and that on examining it he saw something in it which he thought to be a bug or a spider; that he "got kind of nervous" thinking he had swallowed a

part of "that dirty bug"; that later he vomited and had pain in his stomach; that he vomited for over a week, and whenever he thought of how the bottle looked he would get upset and vomit. His attending physician found that he had a recurrence of a pre-existing ulcer, and testified that if a man receives a sufficient shock to cause him to vomit it might cause a recurrence of an ulcer; that in his opinion plaintiff received a nervous shock which started vomiting, and caused an irritation which probably lighted up an old ulcer. It is true that he did say that the liquid itself which plaintiff drank had nothing to do with the condition that developed in plaintiff's stomach, but that his idea was that seeing the brush in there and the shock made plaintiff ill.

Defendant's contention seems to be that however noisome and disgusting a foreign object found in a beverage may be or appear, the manufacturer of such beverage cannot be held liable for negligence in permitting such object to be in his product unless the contents of the bottle are themselves rendered unfit for human consumption; and that regardless of the effect of the finding of such object in a bottle from which he has drunk, a party cannot recover damages for sickness resulting therefrom, unless he is actually poisoned or otherwise injuriously affected by the drink itself. ▮ We think that a court may well take judicial notice that even a normal person in seeing a disgusting looking object in a bottle from which he has just drunk may and often will suffer intense nausea which may produce more serious results. ▮ Also one may recover for injury resulting from mental shock in such cases. In *Dryden* v. *Continental Baking Co.*, 11 Cal.2d 33 [77 P.2d 833], plaintiff ate bread manufactured by defendant, which bread contained glass. The court said that even were plaintiff's injuries confined to nervous shock, the right to recover for subsequent disturbances of the nervous system is settled. Also see *Taylor* v. *Pole,* 16 Cal.2d 668, 671 [107 P.2d 614], and *Cook* v. *Maier,* 33 Cal.App.2d 581, 584 [92 P.2d 434].

▮ In support of its contention that the evidence does not support the verdict of the jury, appellant urges that it introduced evidence that the standard of conduct of defendant in the manufacture of Coca-Cola was the same as the fair average of all manufacturers of the drink, that evidence offered excluded the possibility that the brush was left in the bottle by defendant, that there is no direct evidence that

defendant bottled the questioned Coca-Cola. Without review-
ing the evidence on these points it is sufficient to say that
evidence that the standard of conduct of defendant in the
manufacture of its product is the same as the fair average
of all manufacturers of the drink is not conclusive.

There are numerous cases holding that the unexplained
presence of a foreign object or substance in bottled or packaged
goods is a sufficient basis for an inference of negligence on
the manufacturer's part to send the case to the jury. (*Linker*
v. *Quaker Oats Co.*, 11 F.Supp. 794, 105 A.L.R. 1039 n.;
*Rozumailski* v. *Philadelphia Coca-Cola Bottling Co.*, 296 Pa.
114 [145 A. 700]; *Dryden* v. *Continental Baking Co.*, 11
Cal.2d 33, 38, *supra*.) And as to whether the evidence offered
by defendant excluded the possibility that the brush was
left in the bottle by defendant, and whether defendant manu-
factured the questioned bottle, these questions were for the
jury, and we cannot say that there was not sufficient evi-
dence to justify their verdict.

█ It is further argued that defendant could not have fore-
seen that the leaving of the brush in the bottle would pro-
duce the effects upon plaintiff shown here to have resulted,
because the injury claimed by plaintiff is not the natural and
probable consequence of the wrongful act; and it is urged
that a high degree of caution was not imposed upon defen-
dant as producer. But there is substantial authority for hold-
ing that a higher degree of care is required of the producer
of foods and beverages than is usually made applicable in
other charges of negligence. (*Dryden* v. *Continental Baking
Co.*, 11 Cal.2d 33, 38 [77 P.2d 833]; *Bissonette* v. *National
Biscuit Co.*, 100 F.2d 1003; *Ward Baking Co.* v. *Trizzino*,
27 Ohio App. 475 [161 N.E. 557]: *Rozumailski* v. *Philadel-
phia Coca-Cola Bottling Co.*, 296 Pa. 114 [145 A. 700].)

█ Appellant's complaint about the instructions appears to
be that those given at plaintiff's request deal solely with the
facts of the case in relation to negligence; that the court
erroneously instructed, at plaintiff's request, that a high
degree of care is imposed upon a manufacturer of food to see
that same is free from deleterious substances, as it contends
defendant was obliged to use only ordinary care; that instruc-
tions given at plaintiff's request on the measure of damages
were faulty, and that there were conflicting instructions. No
complaint is made that the court refused to give any of the

instructions requested by defendant, and we believe that the instructions proposed by defendant and given by the court were extremely favorable to defendant. No reasonable complaint can be made that plaintiff did not propose instructions on the subject of warranty, as he was under no obligation to do so. The instruction regarding the degree of care imposed upon a manufacturer of food is consistent with cases hereinbefore cited, especially *Dryden* v. *Continental Baking Co., supra;* and furthermore the court gave, at defendant's request, an instruction embodying the standard of ordinary care. Since something more than ordinary care is demanded of a manufacturer of food, defendant is in no position to complain of conflict in this respect. On the measure of damages the court, at defendant's request, gave instructions embodying the provisions of subdivision (6) of section 1789 of the Civil Code on measure of damages on breach of warranty, and section 3300 of the Civil Code on breach of obligation arising from contract. It also gave, at defendant's request, instructions on unavoidable accident and contributory negligence, though there was no evidence of the latter and only the negative testimony of inability to explain how the cleaning brush got into the bottle, to support the former.

Insofar as other alleged conflicts in instructions are concerned, we cannot say that there was any error that resulted in a miscarriage of justice or that justifies a reversal, in view of section 4½ of article VI of the Constitution. The judgment and the order denying a new trial are affirmed.

Schottky, J. pro tem., and Thompson, J., concurred.