## SWEENEY et al. v. CAIN.
### No. 12320.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 7, 1951.

Rehearing Denied Nov. 28, 1951.

Davenport & Ransome, Brownsville, for appellants.

Asa H. Moore, La Feria, for appellee.

W. O. MURRAY, Justice.

This suit was instituted by Lucy Cain against Thomas H. Sweeney, Jr., and Payton T. Sweeney, seeking to recover damages alleged to have been sustained by her as the result of drinking a bottle of Coca Cola with some foreign substance in it. The trial was to a jury and resulted in judgment in plaintiff's favor in the sum of

$2000.00, from which judgment defendants have prosecuted this appeal.

Appellants are engaged in manufacturing and selling Coca Cola in Cameron County and delivered Coca Cola to various business establishments, including the Red & White grocery store located on the East side of South Main Street in La Feria, Texas. On the 31st day of July, 1950, appellee purchased a bottle of Coca Cola at this store and drank about half of it when she discovered a foreign substance in the bottle. She described this foreign substance as "a greenish brown slimy looking stuff with black spots in it." She took some of this foreign substance in her mouth, she swallowed some of it and some she spit out. She showed the contents of the bottle to others present and they all testified there was a foreign substance in the bottle. In about fifteen or twenty minutes she became sick and went home. She had cramps in the pit of her stomach and cold perspiration began pouring off her face. She was deathly sick. She started vomiting. She placed herself under the care of a doctor who treated her a number of times almost daily up to September 17, 1950. She did not go back to work until October 5th. The contents of the bottle were analyzed for certain poisons but none were found. An analysis of the contents of the bottle was made on August 9th which showed mold. The bottle had been kept in a refrigerator during the intervening time.

Appellants contend that they should have been given an instructed verdict because there was no evidence identifying the foreign substance in the bottle of Coca Cola in question nor purporting to show that such substance constituted a contamination to such an extent that it was unfit for human consumption. And, further, that there is no evidence the foreign substance in the bottle of Coca Cola was the cause of appellee's illness and damage.

It is true that there was not a chemical analysis showing just what the foreign substance in the beverage was, or that it was poisonous or unfit for human consumption. The analysis did show that there was a mold formation present in the bottle.

It is settled law in this state that manufacturers of food or drink which is intended for human consumption may be held liable for damages caused to a person who eats or drinks the same upon an implied warrant, if such food is contaminated to such an extent that it is unfit for human consumption. Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479.

The question here raised is the sufficiency of the evidence to raise a jury question as to the unfitness for human consumption of the contents of the bottle in question.

The evidence shows that appellee, who was feeling perfectly well at the time, drank from a bottle of Coca Cola which contained a brown, greenish slimy substance with black specks in it and within fifteen or twenty minutes thereafter she became very sick, her stomach began to cramp, cold perspiration began to pour off her face, and she began vomiting. She became so sick that she had to be treated by a physician for a number of days. She did not go back to work for more than two months. This evidence was sufficient to raise a question of fact to be decided by the jury as to whether or not the contents of the bottle in question were contaminated to such an extent as to be unfit for human consumption. The question was submitted to the jury and answered by them favorably to appellee. There is no reason to set this finding aside.

It is true that the chemical analysis did not reveal any poison in the bottle but only a mold formation. It is also true that appellee's evidence does not show just what the foreign substance in the bottle was unless it was mold. However, a person drinking from a bottle of Coca Cola which is ordinarily clear, pure and wholesome, suddenly finding her mouth full of a brown, greenish slimy substance, swallowing part of it and being able to spit some of it out, then looking into the bottle and finding this greenish slimy substance, could very easily become sick and suffer from intense nausea, and such nausea could produce sickness requiring treatment of a physician as was the case here. Under such circumstance you

could hardly say that such Coca Cola was a wholesome beverage fit for human consumption.

We are cited to Amarillo Coca-Cola Bottling Co. v. Loudder, Tex.Civ.App., 207 S.W.2d 632. In that case the foreign matter in the bottle was identified as a mouse, while here there is no identification of the foreign matter. Appellants contend that the foreign substance must be identified so that the jury may determine whether or not it was fit for human consumption. We have not found any Texas case where the foreign matter was unidentified, but we have found the Nevada case of Underhill v. Anciaux, Nev., 226 P.2d 794, 798, where the foreign substance remained unidentified, yet the manufacturer of the beverage was held liable. What was said in that case might well be repeated here. The Court said:

"It is clear that respondent drank from a bottle of Coca Cola; that foreign matter was contained in the bottle; that she was rendered immediately ill; that her illness became prolonged over a substantial period of time and developed in gravity to a point requiring medical attention, medication and hospitalization. Of these facts there can be no doubt whatsoever. The only link in the factual chain which may be said to be missing, is positive proof through analyses that respondent's illness, not only in its immediate nauseous stage but in its more prolonged stage as well, was caused by harmful qualities of the foreign matter.

"It may be granted that in many cases where the foreign matter was imperceptible and cases where, although perceptible, it still was not of a character designed to shock the sensibilities of the consumer, such connection has been required. Under the facts of the case before us, however, no such connection is necessary.

"In Medeiros v. Coca Cola Bottling Co. of Turlock, Ltd., 57 Cal.App.2d 707, 135 P.2d 676, 680, plaintiff drank from a bottle containing a cleaning brush. In allowing recovery the court stated, 'Defendant's contention seems to be that however noisome and disgusting a foreign object found in a beverage may be or appear, the manufacturer of such object cannot be held liable for negligence in permitting such object to be in

his product unless the contents of the bottle are themselves rendered unfit for human consumption; and that regardless of the effect of the finding of such object in a bottle from which he has drunk, a party cannot recover damages for sickness resulting therefrom, unless he is actually poisoned or otherwise injuriously affected by the drink itself. We think that a court may well take judicial notice that even a normal person in seeing a disgusting looking object in a bottle from which he has just drunk may and often will suffer intense nausea which may produce more serious results. Also one may recover for injury resulting from mental shock in such cases. * * *' To the same effect: Dryden v. Continental Baking Co., 11 Cal.2d 33, 77 P.2d 833; Coca Cola Bottling Co. of Fort Worth v. Burgess, Tex.Civ.App., 195 S.W.2d 379.

"The opinion in the Medeiros case reviews other authorities granting recovery notwithstanding absence of proof that the foreign substance present in each case was, in fact, poisonous or chemically harmful. The cases collectively present a most unappetizing assortment of objects including: a metal object having the appearance of a corroded paper clip covered with greenish substance; a decomposed cockroach; a medicated finger bandage of gauze impregnated with some drug; a moldy substance, spongy and soft.

"To this legion of distaste the foreign matter in the case at bar might well be added. There can be no question but that it was highly disgusting to the respondent. It is described in the testimony of three witnesses who observed it the evening of its discovery or the following day: respondent herself, her husband and her next-door neighbor it is consistently characterized as 'slimy'. Respondent states, '* * * It was kind of slimy. It was black and it looked like it might have been a bug or something.'

"The neighbor, with a fine sense of detail, stated, 'The slime stuck on the bottle; it was a greenish color and it was moving in there.'

"Clearly the force of impact of the image rendered it a memorable one.

"Nor is it necessary here to rely upon judicial notice to establish the possibility of illness under the circumstance. Expert testimony from appellants' own witness, Doctor Hardy, established three causes for gastroenteritis: bacteria contamination, irritation from poison, and psychogenesis. Under cross examination he explained the last of these included illness caused by force of imagination. The testimony included the following:

"'Q. Well if it did taste badly and look sickening and disgusting, could it make a person ill? A. Yes.

"'Q. That would be an actual physical illness, wouldn't it? A. Yes.'

"Under the facts and the law it is held that there was a sufficiency of evidence to justify the determination of the lower court that respondent's illness was the result of her drinking the contents of the bottle."

■ Appellants next contend that the court erred in not declaring a mistrial after the introduction before the jury over defendants' objections, of the fact that the Coca Cola Bottlers Association of Atlanta, Georgia, had made an investigation in the case, thereby causing the jury to believe that the association was the insurer of appellants herein. We overrule this contention. It is pointed out that the Coca Cola Bottlers Association of Atlanta, Georgia, is an insurance company, however, this fact was never made known to the jury in any way. Appellants had developed the fact that a questionnaire had been filled out and appellee was asked if this questionnaire had not been filed with the Brownsville Coca Cola Company of Brownsville. The testimony complained of was introduced in explanation of this inquiry, for the purpose of showing the true facts were that the questionnaire was sent out by the Coca Cola Bottling Association of Atlanta, Georgia, and that the report was made to it and not to the Brownsville Coca Cola Company. The introduction of this testimony did not require the granting of a mistrial in the case.

Accordingly, the judgment of the trial court will be affirmed.