[Civ. No. 9782.    Third Dist.    Aug. 11, 1960.]

HARRISON PAUL, Appellant, v. RODGERS BOTTLING COMPANY (a Corporation), Respondent.

J. W. Ehrlich and Edward F. Dullea for Appellant.

Thomas H. Healy for Respondent.

PEEK, J.—Plaintiff appeals from a judgment entered upon a defense verdict in an action brought to recover damages for certain illnesses alleged to have resulted from his consumption of a portion of a bottle of Sun Drop Cola bottled by the defendant, which, when opened, contained a dead mouse. Plaintiff's complaint consisted of two causes of action—one for negligence and one for breach of implied warranty.

The incident occurred on the afternoon of June 19, 1956, at the Mare Island Naval Shipyard. Plaintiff, in the presence of three coworkers, removed the bottle from a vending machine, uncapped it without shaking it, and took three or four swallows before noticing that the liquid had a peculiar taste. On inspection he discovered the mouse. He claims that as a result of this experience he suffered psychosomatic shock which in turn caused certain physical disorders, such as nausea and diarrhea, for some period of time.

The vending machine from which plaintiff procured the bottle was a standard type used throughout the country. It was maintained and supplied by defendant, whose employees serviced it once or twice a week and collected the money from it. The machine's selective characteristics made it susceptible to tampering in the sense that one could remove and uncap a bottle, insert a foreign substance therein, then recap the bottle and replace it in the machine. However there is nothing in the record to indicate whether or not the bottle in question had been tampered with. Additionally defendant introduced evidence of its bottling procedure and of the safeguards which it took against the possibility of any foreign substance entering one of its bottles. It is sufficient to say that this evidence tended to prove the improbability of the mouse having gotten into the bottle at the bottling plant.

On appeal plaintiff first complains of several instructions given by the trial court, and second, of the refusal of the court

to give three instructions requested by him. For reasons to be stated hereinafter, we shall confine our treatment of the issues in this case to those instructions given by the trial court on the doctrine of implied warranty.

■ Plaintiff first complains of defendant's instruction Number 21, which charged the jury: "The law recognizes that in the case of a bottled beverage where continuity of control over the bottle in question may be interrupted as between bottler and consumer that it is possible for any third person having control over or access to the bottle in the interim between bottling and consumption to remove and then replace the cap or top. In the absence of evidence that a foreign ingredient was actually sealed within the contents of the bottle by the bottling company it devolves upon a plaintiff to prove lack of opportunity for tampering by any such third persons if he is to prove a case against the bottler upon the grounds of either negligence or implied warranty."

We think that the instruction complained of must be read in light of defendant's instruction Number 20, which immediately preceded Number 21 and which told the jury: "In connection with plaintiff's alleged cause of action based upon a claimed breach of an implied warranty by the defendant RODGERS BOTTLING Co., you are instructed that before he lawfully may recover upon such cause of action, plaintiff HARRISON PAUL must prove by a preponderance of the evidence that said defendant actually breached its warranty with respect to the contents of the bottle of Sundrop alleged to have been partially consumed by the plaintiff. That is to say, to recover, plaintiff must prove by a preponderance of the evidence that the Sundrop in question was not reasonably fit for human consumption at such time as the defendant RODGERS BOTTLING Co. relinquished exclusive control over or possession of said bottle."

Since the defendant tried its case upon the theory that some tampering with the bottle must have taken place between the time that the bottle was placed in the vending machine and the time plaintiff purchased it, we believe that the effect of the instruction quoted was to charge the jury that it was the duty of the plaintiff to make an affirmative showing that there was no reasonable opportunity for tampering during that time. It is usually impossible in cases such as this to establish how the foreign substance actually found its way into the bottle. Under the Uniform Sales Act (Civ. Code, § 1735) the bottling company warranted that its bottle of cola was fit to drink at

the time it was sold to the plaintiff. The result follows under either subdivision 1 or 2 of section 1735. By the latter subdivision a seller warrants that ''Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.'' As the retail distributor as well as the manufacturer of this product, defendant warranted that its product was, at the time sold, fit for human consumption. As stated in Dickerson, Products Liability and the Food Consumer, ''. . . merchantability seems to require several things. First, where the seller is a dealer, the description calls 'for the kind of goods usually sold by that name by such dealer, and the usages of the trade become part of the understanding of the parties.' Second, the goods must be of the kind or quality commonly sold in the market (that is, such that the buyer can resell, if he is a dealer; or get what dealers usually sell, if he is a user, assuming that the true character of the goods were known). Third, the goods must be reasonably fit for the ordinary uses to which goods of that kind are put, and free from defects interfering with sale or ordinary use. For food, this adds up to one thing: It must be fit to eat.'' (P. 58.)

The evidence appears to demonstrate that this bottle of soft drink was not fit for human consumption. As we said in *Medeiros* v. *Coca Cola Bottling Co.*, 57 Cal.App.2d 707, 714 [135 P.2d 676], ''We think that a court may well take judicial notice that even a normal person in seeing a disgusting looking object in a bottle from which he has drunk may and often will suffer intense nausea which may produce more serious results.'' (See also *Moss* v. *Coca Cola Bottling Co.*, 103 Cal.App. 2d 380, 383 [229 P.2d 802].) If, therefore, the jury believed the uncontradicted testimony of the witnesses who stated that plaintiff purchased this bottle of cola, drank therefrom, and then discovered a mouse and suffered consequent shock and physical upset, defendant breached its warranty under the above-cited sections of the Civil Code, and is liable to the plaintiff therefor, in the absence of such negligence on the part of plaintiff as would excuse the defendant from consequential damages for its breach. Under this view the question of whether or not the bottle which plaintiff purchased was tampered with prior to the time that he removed it from the vending machine is irrelevant, and the instructions given by the trial court were erroneous, and prejudicially so, because they left to the jury the opportunity to render a verdict for

the defendant on the ground that some third person may have tampered with the bottle between the time it was placed in the vending machine and the time it was removed therefrom by plaintiff.

We are satisfied that irrespective of the opportunity of tampering, defendant warranted its product, and to the extent that tampering was possible it assumed the risk of such activity. By way of analogy, it may be pointed out that criminal liability for the sale of a product containing deleterious substances is in this state absolute, regardless of the opportunity of third persons to tamper with the product sold. In his concurring opinion in the case of *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 463 [150 P.2d 436], Mr. Justice Traynor said:

"In the case of foodstuffs, the public policy of the state is formulated in a criminal statute. Section 26510 of the Health and Safety Code prohibits the manufacturing, preparing, compounding, packing, selling, offering for sale, or keeping for sale or advertising within the state, of any adulterated food. Section 26470 declares that food is adulterated when 'it has been produced, prepared, packed, or held under insanitary conditions whereby it may have been rendered diseased, unwholesome or injurious to health.' The statute imposes criminal liability not only if the food is adulterated, but if its container, which may be a bottle (§ 26451), has any deleterious substance (§ 26470, subd. (6)), or renders the product injurious to health. (§ 26470, subd. (4).) The criminal liability under the statute attaches without proof of fault, so that the manufacturer is under the duty of ascertaining whether an article manufactured by him is safe. (*People* v. *Schwartz*, 28 Cal.App.2d Supp. 775 [70 P.2d 1017].) Statutes of this kind result in a strict liability of the manufacturer in tort to the member of the public injured. (See cases cited in Prosser, Torts, p. 693, note 69.)"

Since the judgment must be reversed for the reasons hereinabove stated, we deem it advisable to discuss certain other contentions raised by the appellant. First, he complains of defendant's Instruction Number 13, by which the jury was instructed upon the doctrine of assumption of risk. Since the doctrine was not pleaded nor placed in issue at the trial, and since there was no evidence whatever that plaintiff had actual knowledge of the existence of this specific danger, the instruction should not have been given. (*Guerrero* v. *Westgate Lumber Co.*, 164 Cal.App.2d 612, 618 [331 P.2d 107].)

■ Plaintiff is also correct in attacking defendant's Instruction Number 25, which reads as follows:

"You are instructed, if it be found that the record is devoid of evidence that a plaintiff has suffered any physical injury or illness resulting of his drinking a small amount of the contents of a bottle such as in an instance where nausea stems exclusively from a mental reaction rather than a physical effect, the plaintiff has not made out a case for recovery. Mental indisposition or suffering unless resulting from and necessarily a part of physical injury or illness and inseparable therefrom, does not constitute an injury for which substantial damages may be awarded." Such is not the law. (See *Moss* v. *Coca Cola Bottling Co., supra.*) Plaintiff is entitled to recover for the pain and suffering—together with any special damages—which resulted from the physical consequences of his shock in drinking from the bottle in question.

We shall not discuss the refusal of the trial court to give the instructions asked by the plaintiff, in particular the instruction requested upon the doctrine of res ipsa loquitur, because we are convinced from a reading of the record that plaintiff has failed to adequately protect himself. That is, he has not shown this court that the instructions allegedly requested were, in fact, refused by the trial court, rather than withdrawn by plaintiff himself as is asserted by the defendant.

■ We entertain no doubt that res ipsa loquitur is applicable to the facts of this case. The mere fact that this accident occurred was prima facie evidence of defendant's negligence, regardless of the opportunity of third persons to tamper with the bottle while in the vending machine, so long as the bottle was handled and dispensed in the normal manner. (See *Keller* v. *Coca Cola Bottling Co.,* 214 Ore. 654 [330 P.2d 346].) While we do not reverse on this ground, because of plaintiff's failure to press the trial court for outright refusal of the instructions requested on the doctrine of res ipsa loquitur, we think that in the event of a retrial the comments may be helpful—assuming that plaintiff amends his complaint so as to allege negligence in general rather than in specific terms, as is required for the application of the doctrine. (See *Smith* v. *McClary,* 28 Cal.App.2d 468, 470 [82 P.2d 712].)

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.