[Civ. No. 16251. Second Dist., Div. Three. Nov. 3, 1948.]

HELEN EMDEN, Respondent, v. JACOB L. VITZ et al., Appellants.

Bertram H. Ross for Appellants.

Jones & Hoyt and George A. Elstein for Respondent.

SHINN, P. J.—Defendants, the owner, manager and assistant manager of the Hermoyne Apartments in Los Angeles, appeal from a judgment awarding plaintiff damages for loss of personal property and for personal injuries. The action arose in the following manner.

Prior to October 10, 1945, the Hermoyne Apartments were in the possession and control of the California Building and Loan Commissioner, as administrator of the assets of Pacific States Savings and Loan Company. Prior to August 31, 1945, apartment 509 in the said building was leased on a month-to-month tenancy to one Victor G. Emden, father-in-law of the plaintiff in the present action. On August 31, 1945, Victor G. Emden having died, the said apartment was rented to plaintiff on a month-to-month tenancy, and she then paid the rental for the month of September. Plaintiff was given a receipt for the

rent, placed in possession, and provided with a key, and the building employees were informed that she was a tenant. She moved in some personal belongings during September, and with the knowledge and consent of the management, used the apartment from time to time, though not as a permanent residence. By check dated October 1, 1945, plaintiff duly paid the rent for the month of October, and received a receipt therefor. On October 10, 1945, defendant Vitz completed the purchase of the Hermoyne Apartments from the Building and Loan Commissioner, and immediately entered into possession and control thereof. As part of this purchase arrangement, the October rentals were prorated as of October 10th, and the price was adjusted accordingly. Vitz' two daughters, Mrs. Barber and Mrs. Seigal, also defendants in this action, were designated by him as manager and assistant manager of the apartment.

On the evening of October 13th, when plaintiff attempted to enter apartment 509, she found that her key would not open the door. She went to the manager's office to complain, and to seek assistance. Mrs. Seigal heard her complaint, and then invited her into Mr. Vitz' private office where she found Vitz and Mrs. Barber awaiting her. Vitz told plaintiff she could not have the apartment. Mrs. Seigal leaned against the door so that plaintiff could not leave; and then she and Vitz yelled and screamed at plaintiff, saying the O.P.A. could not run the property, while defendant Barber shook some papers at her, saying, ''You haven't got an apartment here, we will select our own tenants.'' The court found upon ample evidence that the conduct of defendants as detailed by plaintiff caused plaintiff to become frightened, and as a proximate result thereof, to suffer an upset to her glandular condition, causing shortness of breath, pains about the heart, nervousness, headaches, loss of sleep, and inability to carry on her normal activities. There was evidence to support these findings as to the physical consequences of plaintiff's emotional distress. Her own testimony on the subject was corroborated and amplified by that of her physician, Dr. Billig, who stated that plaintiff had suffered an acute upset of her glandular condition in October, 1945, marked by excessive secretions of insulin in the Islands of Langerhans and pancreas, increase in nervous sensitivity, considerable lability of pulse and heart beat, and unstable blood pressure. Dr. Billig's opinion was that this condition was caused by ''some sort of upset or emotional experience,'' and he stated that plaintiff had said

in her history "that her experience was an upset from an apartment of some sort." He testified further that glandular imbalance is a "very serious" condition.

It was shown that Mrs. Barber, with the approval of Vitz, had ordered plaintiff's apartment to be bolted from the inside, thereby preventing her from gaining access thereto. On October 15th, plaintiff, in the presence of two policemen, exhibited to defendants her receipts and cancelled checks for the rent, and formally demanded admittance to the apartment, but was refused. Again on October 31st, plaintiff tendered a check for the November rent to Mrs. Barber, who refused to accept it. Plaintiff then requested that she be allowed to remove her personal belongings from apartment 509, but this request was also denied. The court found that defendants had unlawfully and without excuse or provocation, evicted plaintiff from her apartment and refused to permit her to enter to remove her personal belongings therefrom. Judgment was accordingly entered, awarding plaintiff $1,000 damages for loss of personal property, and $2,000 for personal injuries.

The only material issue raised by defendants' appeal involves the propriety of the award of damages for personal injuries under the circumstances shown. Appellants do not question the sufficiency of the evidence to support the court's findings, but contend that there can be no cause of action for personal injuries resulting from fright caused chiefly by spoken words alone.

In respect to the right to recover damages for personal injuries resulting from an emotional or mental disturbance, it has been said that "the authorities are in a state of dissension probably unequalled in the law of torts." (52 Am.Jur., Torts, § 55, p. 399.) It must be conceded that the law has been reluctant to accord general protection to the interest in one's peace of mind or emotional tranquillity as such, largely, perhaps, because of the common-sense view that "against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." (*Magruder, Mental And Emotional Disturbance In The Law of Torts* (1936), 49 Harv.L.Rev. 1033, 1035.) The interest in physical well-being, on the other hand, has long been accorded extensive legal protection (see cases cited below; Pound, *Interests In Personality* (1915), 28 Harv.L.Rev. 343, 355-62), and it

would seem clear that, contrary to appellants' contention, the right to maintain an action for a wrongful invasion of this latter interest cannot validly turn upon any supposed distinction between cases where the physical injuries are the direct and immediate result of the defendant's wrongful conduct, and cases where they are the consequence of mental or emotional excitation caused by that conduct. The fallacy inherent in any such distinction was pointed out by the Supreme Court in *Sloane* v. *Southern Cal. Ry. Co.*, 111 Cal. 668, 680 [44 P. 320, 32 A.L.R. 193] : "It is a matter of general knowledge that an attack of sudden fright or an exposure to imminent peril has produced in individuals a complete change in their nervous system, and rendered one who was physically strong and vigorous weak and timid. Such a result must be regarded as an injury to the body, even though the mind be at the time injuriously affected. Whatever may be the influence by which the nervous system is affected, its action under that influence is entirely distinct from the mental process which is set in motion by the brain. The nerves and nerve centers of the body are part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves or the entire nervous system is thus affected, there is a physical injury thereby produced, and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect through some action upon the mind."

It is clear, furthermore, that the court in the Sloane case regarded the right to recover in such a case as dependent upon the nature of the results rather than the nature of the tortious conduct, for after reviewing the cases of *Bell* v. *Great Northern Ry. Co.*, (1890) L. R. 26 Ir. 428 and *Purcell* v. *St. Paul City Ry. Co.*, 48 Minn. 134 [50 N.W. 1034, 16 L.R.A. 203], the court went on to state (p. 683) : "The mental condition which superinduced the bodily harm in the foregoing cases was fright, but the character of the mental excitation by which the injury to the body is produced is immaterial. If it can be established that the bodily harm is the direct result of the condition, without any intervening cause, it must be held that the act which caused the condition set in motion the agencies by which the injury was produced, and is the proximate cause of the injury." (Accord: *Alabama Fuel & Iron Co.* v. *Baladoni*, 15 Ala.App. 316 [73 So. 205, 207] ; *Green* v. *T. A. Shoemaker & Co.*, 111 Md. 69 [73 A. 688,

691-2, 23 L.R.A.N.S. 667]; cf., *Salmi* v. *Columbia & N. R. Co.,*
75 Ore. 200 [146 P. 819, 820, L.R.A. 1915D 834].)

It may be conceded that the foregoing propositions,
although firmly based upon well-recognized principles of tort
law, have not met with universal application, for a definite
cleavage of opinion exists among the authorities from the
various jurisdictions as to whether an action for personal
injuries resulting solely from fright or other mental distress
may be maintained in the absence of some contemporaneous
impact or injury to the plaintiff, however slight it might be.
(See cases collected in Hallen, *Damages for Physical Injuries
Resulting From Fright or Shock* (1933), 19 Va.L.Rev. 253;
98 A.L.R. 402; 76 A.L.R. 682; 40 A.L.R. 983; 11 A.L.R. 1120.)
The doctrine announced in *Sloane* v. *Southern Cal. Ry. Co.,
supra,* however, has been consistently followed in California,
and recovery has been granted for physical injuries resulting,
without impact, from mental distress in a variety of cir-
cumstances. (*Lindley* v. *Knowlton,* 179 Cal. 298 [176 P. 440]
[marauding chimpanzee]; *Webb* v. *Francis J. Lewald Coal
Co.,* 214 Cal. 182 [4 P.2d 532] [vehicle crashing into plain-
tiff's store]; *Cook* v. *Maier,* 33 Cal.App.2d 581 [92 P.2d 434]
[semble]; *Medeiros* v. *Coca-Cola Bottling Co.,* 57 Cal.App.2d
707 [135 P.2d 676] [disgusting looking object in bottle of
beverage].) Similar decisions have been rendered in other
jurisdictions, where spoken words alone have been held ac-
tionable if physical injuries resulted. (*Whitsel* v. *Watts,* 98
Kan. 508 [159 P. 401, L.R.A. 1917A 708] [violent and
indecent language]; *Erwin* v. *Milligan,* 188 Ark. 658 [67
S.W.2d 592] [insulting proposals]; *Johnson* v. *Sampson,* 167
Minn. 203 [208 N.W. 814, 46 A.L.R. 772] [false accusation of
unchastity]; *Janvier* v. *Sweeney* [1919], 2 K.B. 316 (false
accusation of being a spy]; *Bielitski* v. *Obadiak* (Sask. Ct.
App.), 65 D.L.R. 627 [false report that plaintiff's son had
hanged himself].)

As these and other cases cited above amply illustrate,
the nature of the wrongful conduct which induces physical
harm through its effect on the mind and nervous system is
generally immaterial. The determination whether or not
given conduct is legally wrongful, of course, may involve
factual distinctions of importance and substance (compare
Rest., Torts, § 312 with *ibid.,* § 313); but once the wrongful
quality is established, it matters not whether that conduct
consisted of acts alone, or of acts accompanied by words, or
of mere spoken words alone, for the legal inquiry in each case

is thenceforth confined to the well-established channels of proximate cause and damages.

Appellants' contention that the rule permitting the maintenance of the action would be impractical to administer and would flood the courts with litigation is but an argument that the courts are incapable of performing their appointed tasks, a premise which has frequently been rejected. (See *Simone* v. *Rhode Island Co.*, 28 R. I. 186 [66 A. 202, 206, 9 L.R.A.N.S. 740]; *Chiuchiolo* v. *New England Wholesale Tailors*, 84 N. H. 329 [150 A. 540, 543]; *Kenney* v. *Wong Len*, 81 N. H. 427 [128 A. 343, 347]; note, 3 L.R.A.N.S. 51; see Throckmorton, *Damages For Fright* (1921), 34 Harv.L.Rev. 260, 274.

■ Considered in relation to the applicable legal principles, it cannot be doubted that the present case affords a sound basis for recovery. The evidence justified a conclusion that defendants intentionally and unreasonably subjected plaintiff to severe mental distress involving a risk of causing physical harm; and by clear and uncontradicted evidence, it was proven that substantial physical injuries were actually incurred by plaintiff as a proximate result of fright engendered by the said conduct of defendants. Liability under these circumstances is manifestly correct. (Rest., Torts, § 312.)

■ Appellants also claim that the judgment infringes upon their constitutional right of freedom of speech. We mention the point only to remark that the right is not a license for the commission of crimes or the malicious oppression of one's fellow citizens. A decent respect for the right of free speech requires that it be protected against abuse.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 30, 1948.