[Civ. No. 20725. Second Dist., Div. Three. July 28, 1955.]

DOROTHY GUILLORY et al., Respondents, v. MILDRED GODFREY et al., Appellants.

Cletus J. Hanifin for Appellants.

Lawrence J. Yanover for Respondents.

ASHBURN, J. pro tem.*—In this action for recovery of damages for malicious interference with plaintiffs' restaurant business, a jury awarded plaintiffs Dorothy Guillory and

*Assigned by Chairman of Judicial Council.

Preston R. Guillory compensatory damages in the sum of $2,250 and punitive damages of $2,000. From the judgment entered on the verdict defendants Mildred Godfrey and Froy J. Tristany have taken this appeal. The action was dismissed as to defendant Edward Godfrey.

The complaint alleges that plaintiffs were owners and operators of a café located at 715½ South Main Street in Los Angeles; that defendant Froy J. Tristany was doing business under the name of Duke's Liquor Stores; that defendant Mildred Godfrey was an agent and employee of Tristany and acted within the scope of her employment and under the directions of Tristany; that on and after March 17, 1952, "defendants and each of them," with intention to destroy plaintiffs' business, maliciously and wantonly intimidated their customers in that, whenever customers were about to enter the café, defendants would ask them if they were "Nigger Lovers" and make other intimidating remarks; that Mildred Godfrey on March 24, 1952 entered the café and forcibly evicted a customer, causing a large crowd of people to collect; that the customers were actually intimidated; that this course of conduct started when plaintiffs employed a colored cook in the café; that as a proximate result of defendants' malicious acts business dropped off more than 50 per cent; that regular customers withdrew their patronage; that plaintiffs became nervous and upset, and plaintiff Dorothy became ill and required medical care, all to the damage of plaintiffs in the sum of $10,000; that plaintiffs lost money in the business and profits amounting to $1,000; that, by reason of the malicious and wanton acts of defendants, the plaintiffs demand exemplary damages of $20,000.

The evidence is to be viewed in the light most favorable to respondents, with every legitimate inference drawn in their favor. (*Murphy* v. *Ablow*, 123 Cal.App.2d 853, 858 [268 P.2d 80].) Thus arrayed it discloses the following situation. Plaintiffs owned and operated a café on Main Street in Los Angeles and defendant Tristany conducted a liquor store next door under the name Duke's Liquor Stores. Defendant Mildred Godfrey was Tristany's sister and active in the conduct of the store. On March 17, 1952, plaintiffs hired a Negro cook, William Murrell, who then started to work. From that day until plaintiffs closed the café, about April 28, 1952, defendants engaged in a course of conduct calculated and intended to intimidate plaintiffs' customers and drive away their trade. As patrons would enter defendants would ask

if they were "Nigger Lovers," make disparaging remarks about the café and the food "cooked by a nigger," perform antics in front of the place, make gestures, some of them obscene, yell at customers such things as "Don't go in there. The place isn't fit to eat in. She has this nigger in there. Don't go in there." Most of these things were done by the sister Mildred, but Froy himself stood on the sidewalk joining in the gestures, laughing at Mildred's antics, made disparaging remarks and fully supported his sister's activities. She called plaintiffs "dirty Mexicans,"—"don't go into the restaurant, can't you see this dirty Mexican people, can't you see that lady, the lady's hands, can't you see the lady don't—go away from here." On March 24th Mildred had a fight in the café with a man called Frenchie, calling him names that one witness, Miss Moreno, would not repeat. According to Murrell: "She came in, says, 'Get out of here, you nigger lover. You know I told you not to eat in here.' She drug him out by the ear, pulled him out, beat him up. He began to bleed at the mouth." On another occasion Tristany told plaintiff in the presence of customers "you have no business having that god-damn nigger working in here." When Mrs. Guillory protested to Mildred Godfrey about her conduct she replied: "I'm just not going to go for that," and "I'm not only not going to let you operate, but I'm not even going to let you sell." Tristany told Mr. Guillory "I know my sister did wrong, but, . . . I'm for it 100 per cent. I feel exactly the way she does." "So he said, 'Whatever my sister done,' he said, 'I'm her brother and I'll back her a hundred per cent. You can go right now,' he says, 'load your gun,' he says, 'and fire, but make sure you don't miss.'" This was a continuous course of conduct. The business of the café dropped off to nothing and plaintiffs were unable to sell or to operate. The mental perturbation which this caused to plaintiff Dorothy Guillory aggravated an existing gall bladder trouble and brought on a complete nervous breakdown.

Appellants' brief does not comply with the rules in numerous respects but counsel has made his points sufficiently for us to be able to dispose of them. He argues first that no cause of action was alleged or proved. He quotes section 43 Civil Code as follows: "Besides the personal rights mentioned or recognized in the Political Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his

personal relations." Then argues that there was no false imprisonment, assault and battery, interference with right of privacy, defamation, or interference with contract between plaintiffs and Murrell. But counsel says nothing about the right of protection "from personal insult" and, more important, ignores the real theory of the complaint and the proof, which is wrongful and malicious interference with plaintiffs' going business. ▊ It is said that "wrongful or malicious interference with the formation of a contract or the right to pursue a lawful business, calling, trade, or occupation has been generally held to constitute a tort, . . ." (86 C.J.S. § 43, p. 956.) This rule prevails in California. (*Finney* v. *Lockhart*, 35 Cal.2d 161 [217 P.2d 19]; *Masoni* v. *Board of Trade of San Francisco*, 119 Cal.App.2d 738, 741-742 [260 P.2d 205]; *Remillard-Dandini Co.* v. *Dandini*, 46 Cal.App.2d 678, 680 [116 P.2d 641]; *California Grape Control Board* v. *California Produce Corp.*, 4 Cal.App.2d 242, 244 [40 P.2d 846]; see also Restatement of Torts, § 766, p. 49; 62 C.J. § 53, p. 1137.) ▊ The evidence amply supports a finding of malicious disruption of plaintiffs' business by defendants and damage proximately flowing therefrom.

▊ Appellants' counsel also argues that no cause of action was stated or proved against defendant Tristany, first, because "there is no allegation that this liquor store of Tristany has committed any act at all" (a unique and refreshing argument) and, secondly, that Mildred was alleged to have acted as Tristany's agent and no proof to that effect was made; that plaintiffs forsook the agency theory during the trial and sought (successfully) to hold Tristany as an actor. The complaint not only alleged ~~~ but it also averred that defendants and each of them committed ~~~ ful acts. At best the shifting of ground by plaintiffs could amount to a variance (Code Civ. Proc., §§ 469-470). The evidence supports the implied finding that Tristany did personally act in concert with his codefendant in committing the tort, and the variance, if one there be, worked no prejudice.

The next contention is that any damage suffered personally by plaintiff Dorothy was not proximately caused by the defendants' wrongful acts. This is based upon the fact that she was nervous, afflicted with gall bladder trouble and other ailments before the tort was committed. ▊ It overlooks the principle that a tort-feasor must take his victim as he finds him. And when his wrong aggravates an existing disability he is liable for that exacerbation and the task of measuring it in

dollars is that of trial judge or jury. (*Harris* v. *Los Angeles Transit Lines*, 111 Cal.App.2d 593, 599 [245 P.2d 35].)

It is now well settled in this state that damages may be awarded for mental suffering caused by intentional and outrageous conduct. (*Emden* v. *Vitz*, 88 Cal.App.2d 313, 318 [198 P.2d 696]; *Bowden* v. *Spiegel, Inc.*, 96 Cal.App.2d 793, 794-795 [216 P.2d 571]; *Richardson* v. *Pridmore*, 97 Cal.App. 2d 124, 130 [217 P.2d 113, 17 A.L.R.2d 929]; *State Rubbish Collectors Assn.* v. *Siliznoff*, 38 Cal.2d 330, 336 [240 P.2d 282]; see also Restatement, Torts (1948 Supp.), § 46, p. 612; 15 A.L.R.2d 111, anno.)

The further argument that Tristany is not liable for damages caused by Mildred Godfrey's misconduct is misplaced because the evidence shows they were acting in concert, and he was an active participant in some of her acts. This makes him liable for the full amount of the damage. (*Marriott* v. *Williams*, 152 Cal. 705, 711 [93 P. 875, 125 Am.St.Rep. 87]; *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 433 [218 P.2d 17]; 11 Cal.Jur.2d § 49, p. 275.)

The claim that the damages are excessive because of failure of proof as to loss of profits from the business cannot be sustained for the verdict for $2,250 general damages is sufficiently supported by the evidence of the injury inflicted upon Dorothy Guillory, regardless of what the showing may have been as to business losses.

Counsel argues that no punitive damages should have been awarded against either defendant. Of course, actual malice is the basis for such an award in a case of this kind. (14 Cal.Jur.2d § 176, p. 810.) That kind of malice was plainly proved here. Tristany's active participation in the tort and his wholehearted endorsement of his sister's conduct and objectives, as shown by above quotations, render him equally liable for a punitive award. Those things show actual malice on his part. And it was for the jury to determine the proper proportion which the compensatory damages should bear to the punitive award. (*Finney* v. *Lockhart*, 35 Cal.2d 161, 163 [217 P.2d 19].) It cannot be said, upon this record, that the punitive award is excessive as to either defendant.

Appellants say there was error in permitting an amendment at the trial to add a claim for $1,333, medical expense to the complaint. The matter was within the discretion of the court (*McDougald* v. *Hulet*, 132 Cal. 154, 162 [64 P. 278]; *Hanna* v. *Hirschhorn*, 112 Cal.App. 438, 441 [296 P. 891]), and, as no real showing of surprise was then made and

no prejudice now appears to have resulted, the ruling cannot be held erroneous.

■ Counsel for appellants urges error in refusal to permit examination of William Murrell under section 2055 Code of Civil Procedure. No transcript reference guides us to the ruling but it has been found at page 596. No explanation other than desire was offered. And it appears that Murrell was the first witness in the case and fully cross-examined. Counsel says the ruling was prejudicial but does not suggest any basis for that claim. It was a discretionary ruling (*Wulferdinger* v. *Pickwick Stages System,* 105 Cal.App. 509, 511 [288 P. 93]; *Litt* v. *Litt,* 75 Cal.App.2d 242, 244 [170 P.2d 684]) in which there was no error.

Appellants further say that no cause of action was stated because the case was not at issue at the time of trial. ■ It seems that a general demurrer to the complaint had been overruled with leave to defendants to answer, but they served ·a special demurrer instead, and same was sustained; thereupon defendants answered the original complaint and plaintiffs did not amend. At the trial defendants' counsel claimed the cause was not at issue and the court ruled to the contrary. Thereupon the trial proceeded upon the complaint and answer thereto and no one suffered any prejudice. By answering the complaint after the ruling upon the special demurrer defendants waived all objections except the general ground of no cause of action. (*Lynch* v. *Gagnon,* 96 Cal.App. 512, 516 [274 P.2d 584]; *Hughes* v. *Heffner,* 29 Cal.App.2d 382, 383 [84 P.2d 540].)

■ Other points are stated in appellants' brief without discussion or citation of supporting authority. They are entitled to no further comment for they are deemed to have been abandoned. (*Estate of Scott,* 90 Cal.App.2d 21, 24 [202 P.2d 357]; *Utz* v. *Aureguy,* 109 Cal.App.2d 803, 807 [241 P.2d 639].)

The appeal from order denying a judgment notwithstanding the verdict is without merit, as shown by the foregoing discussion. The order denying motion for new trial is not appealable and must be dismissed.

The judgment and order denying judgment notwithstanding the verdict are affirmed; the appeal from order denying new trial is dismissed.

Shinn, P. J., and Vallée, J., concurred.