[L.A. No. 29683. In Bank. Apr. 24, 1970.]

MANUEL D. ALCORN, Plaintiff and Appellant, v.
ANBRO ENGINEERING, INC., et al., Defendants and Respondents.

COUNSEL

Robert D. Bash and Hillel Chodos for Plaintiff and Appellant.

Haight, Lyon, Smith & Nye, Charles B. Smith and Henry F. Walker for Defendants and Respondents.

OPINION

**BURKE, J.**—Plaintiff appeals from an order of dismissal entered after defendants' demurrer to the third amended complaint was sustained without leave to amend. The complaint seeks to recover actual and exemplary damages against defendants, based upon their alleged intentional infliction of emotional distress and alleged violation of the Unruh Civil Rights Act (Civ. Code, §§ 51-52). ██ We have concluded that the complaint states a cause of action for intentional infliction of emotional distress, and that the order of dismissal must be reversed.

██ At the outset, it is well settled that a general demurrer admits the truth of all material factual allegations in the complaint (*Flores* v. *Arroyo*, 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]); that the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court (*Katenkamp* v. *Union Realty Co.*, 6 Cal.2d 765, 769 [59 P.2d 473]; *Division of Labor Law Enforcement* v. *Barnes,* 205 Cal.App.2d 337, 346 [23 Cal. Rptr. 55]); and that plaintiff need only plead facts showing that he may be entitled to some relief (*Vanoni* v. *Western Airlines,* 247 Cal.App.2d 793, 795 [56 Cal.Rptr. 115]).

██ In his first cause of action, plaintiff alleged that he is a Negro employed as a truckdriver by defendant Anbro Engineering, Inc., a corporation owned and operated by defendants Thomas Anderson, Sr., and Harlon Anderson, doing business as Anderson Bros., a partnership. On the day of the incident at issue, plaintiff informed defendant Palmer, Anbro's Caucasian field superintendent and plaintiff's foreman, that plaintiff, in his capacity as shop steward for the Teamster's Union, had advised another Anbro employee that he should not drive a certain truck to the job site, since that employee was not a teamster. Plaintiff's remarks to Palmer allegedly were neither rude, insubordinate nor otherwise violative of plaintiff's duties as an employee.

Immediately thereafter, Palmer allegedly shouted at plaintiff in a rude, violent and insolent manner as follows: "You goddam 'niggers' are not go-

ing to tell me about the rules. I don't want any 'niggers' working for me. I am getting rid of all the 'niggers'; go pick up and deliver that 8-ton roller to the other job site and get your pay check; you're fired." Plaintiff thereupon delivered the roller and reported the incident to defendant Thomas Anderson, Jr., a Caucasian and Anbro's secretary, who allegedly ratified and confirmed Palmer's acts, including plaintiff's discharge, on behalf of Anbro and the other defendants.

As a result of the foregoing incident, plaintiff allegedly suffered humiliation, mental anguish and emotional and physical distress. Plaintiff was sick and ill for several weeks thereafter, was unable to work, and sustained shock, nausea and insomnia.

Plaintiff further alleged that defendant Palmer's conduct was intentional and malicious, and done for the purpose of causing plaintiff to suffer humiliation, mental anguish and emotional and physical distress, and that defendant Anderson, Jr.'s conduct in confirming and ratifying Palmer's conduct and in discharging plaintiff, was done with knowledge that plaintiff's emotional and physical distress would thereby increase, and was done intentionally or with a wanton and reckless disregard of the consequences to plaintiff.

Plaintiff also alleged that Negroes such as plaintiff are particularly susceptible to emotional and physical distress from conduct such as committed by defendants.

˴ Plaintiff was reinstated with Anbro through grievance and arbitration procedures, and has received back pay. This action seeks the recovery of actual and exemplary[1] damages for the emotional and physical distress allegedly suffered by him.

This state has long recognized the right to recover damages for the intentional and unreasonable infliction of mental or emotional distress which results in foreseeable physical injury to plaintiff. (*State Rubbish etc. Assn.* v. *Siliznoff, supra,* 38 Cal.2d 330, 336-337; *Vargas* v. *Ruggiero,* 197 Cal. App.2d 709, 717-718 [17 Cal.Rptr. 568]; *Richardson* v. *Pridmore,* 97 Cal.App.2d 124, 130 [217 P.2d 113, 17 A.L.R.2d 929]; *Bowden* v. *Spiegel, Inc.,* 96 Cal.App.2d 793, 794-795 [216 P.2d 571]; *Emden* v. *Vitz,* 88 Cal.App.2d 313, 316-319 [198 P.2d 696]; see Rest. 2d Torts, § 312.)

Plaintiff's allegations that defendants intentionally inflicted emotional

---

[1]Defendants do not challenge the assumption that if plaintiff has stated a cause of action for intentional infliction of emotional distress, then exemplary damages would be a proper item of recovery. (See Civ. Code, § 3294; *State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330, 341 [240 P.2d 282]; *Guillory* v. *Godfrey,* 134 Cal.App.2d 628, 633 [286 P.2d 474].)

distress for the purpose of causing plaintiff to suffer emotional and physical harm, and that plaintiff did suffer physical illness, shock, nausea and insomnia as a result thereof, meet the requirements of the foregoing authorities. ▉ The physical consequences of shock or other disturbance to the nervous system are sufficient to satisfy the requirement that plaintiff has suffered physical injury from defendants' conduct. (*Emden* v. *Vitz, supra,* 88 Cal. App.2d 313, 316-317; see *Vanoni* v. *Western Airlines, supra,* 247 Cal. App.2d 793, 796-797.)

Moreover, the courts of this state have also acknowledged the right to recover damages for emotional distress alone, without consequent physical injuries, in cases involving extreme and outrageous intentional invasions of one's mental and emotional tranquility. (*State Rubbish etc. Assn.* v. *Siliznoff, supra,* 38 Cal.2d 330, 337-338; *Cornblith* v. *First Maintenance Supply Co.,* 268 Cal.App.2d 564 [74 Cal.Rptr. 216]; *Agostini* v. *Strycula,* 231 Cal.App.2d 804, 808 [42 Cal.Rptr. 314]; *Perati* v. *Atkinson,* 213 Cal.App.2d 472, 474 [28 Cal.Rptr. 898]; see Rest.2d Torts, § 46.)

Plaintiff has alleged facts and circumstances which reasonably could lead the trier of fact to conclude that defendants' conduct was extreme and outrageous, having a severe and traumatic effect upon plaintiff's emotional tranquility. ▉ Thus, according to plaintiff, defendants, standing in a position or relation of authority over plaintiff,[2] aware of his particular susceptibility to emotional distress,[3] and for the purpose of causing plaintiff to suffer such distress, intentionally humiliated plaintiff, insulted his race,[4] ignored his union status, and terminated his employment, all

[2]The cases and commentators have emphasized the significance of the relationship between the parties in determining whether liability should be imposed. (See Prosser, Law of Torts [3d ed. 1964], ch. 2, § 11, p. 49; Harper and James, The Law of Torts [1956], § 9, pp. 666-667; Rest.2d Torts, § 46, com. e; Magruder, *Mental and Emotional Disturbances in the Law of Torts,* 49 Harv.L.Rev. 1033, 1051-1063; Prosser, *Insult and Outrage,* 44 Cal.L.Rev. 40, 47; Annot., 15 A.L.R.2d 108, 158-163.) Thus, plaintiff's status as an employee should entitle him to a greater degree of protection from insult and outrage than if he were a stranger to defendants. As provided in Labor Code section 1412: "The opportunity to . . . hold employment without discrimination because of race, religious creed, color, national origin, or ancestry is hereby recognized as and declared to be a civil right."

[3]Plaintiff's susceptibility to emotional distress has often been mentioned as significant in determining liability. (See Prosser, Law of Torts, *supra,* at p. 50; Harper and James, *supra,* at p. 669; Rest.2d Torts, *supra,* com. f; Prosser, *supra,* 44 Cal. L. Rev. 40, p. 50.) With respect to the susceptibility of Negroes to severe emotional distress from discriminatory conduct, see Colley, *Civil Actions for Damages Arising out of Violations of Civil Rights* (1965-1966) 17 Hast.L.J. 189, 201.

[4]Although the slang epithet "nigger" may once have been in common usage, along with such other racial characterizations as "wop," "chink," "jap," "bohunk," or "shanty Irish," the former expression has become particularly abusive and insulting in light of recent developments in the civil rights' movement as it pertains to the American Negro. Nor can we accept defendants' contention that plaintiff, as a truck-

without just cause or provocation. Although it may be that mere insulting language, without more, ordinarily would not constitute extreme outrage,[5] the aggravated circumstances alleged by plaintiff seem sufficient to uphold his complaint as against defendants' general demurrer. ■ "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (Rest. 2d Torts, § 46, com. h; accord, *Halio* v. *Lurie* (1961) 15 App.Div.2d 62 [222 N.Y.S.2d 759, 764]; *Wallace* v. *Shoreham Hotel Corp.* (Mun.Ct.App. D.C. 1946) 49 A.2d 81, 83.)

The multitude of cases[6] upholding on various theories complaints alleging similar circumstances strongly indicates at least that plaintiff has pleaded a situation in which reasonable men may differ regarding defendants' liability. That being so, the order of dismissal should be reversed as to plaintiff's first cause of action.

Plaintiff's second cause of action alleges that he was discharged from employment with Anbro solely because of his race, and that such conduct constituted an unlawful discrimination under sections 51 and 52 of the Civil Code. Section 51 requires "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments" regardless of "color, race, religion, ancestry, or national origin." Section 52 permits the recovery of damages for a violation of section 51.

---

driver must have become accustomed to such abusive language. Plaintiff's own susceptibility to racial slurs and other discriminatory conduct is a question for the trier of fact, and cannot be determined on demurrer.

[5]The Restatement view is that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," but only to conduct so extreme and outrageous "as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Rest. 2d Torts, § 46, com. d; see Prosser, Law of Torts, *supra*, at pp. 46-47.) For examples of allegations held insufficient to state a cause of action for extreme outrage, see *Cornblith* v. *First Maintenance Supply Co., supra,* 268 Cal.App.2d 564 (defendant-employer directed coemployees not to assist plaintiff); *Agostini* v. *Strycula, supra,* 231 Cal.App.2d 804 (defendants made factual statements regarding plaintiff's unsuitability for employment); *Perati* v. *Atkinson, supra,* 213 Cal.App.2d 472 (defendant-coemployee made factual statements regarding plaintiff's failure to obey orders). None of these cases involved vituperative language or vindictive conduct such as alleged in the instant case.

[6]See, e.g., *Fisher* v. *Carrousel Motor Hotel, Inc.* (Tex. 1967) 424 S.W.2d 627; *Beavers* v. *Johnson* (1965) 112 Ga.App. 677 [145 S.E.2d 776]; *Ruiz* v. *Bertolotti* (1962) 37 Misc.2d 1067 [236 N.Y.S.2d 854]; *Browning* v. *Slenderella Systems of Seattle* (1959) 52 Wn.2d 440 [341 P.2d 859, 865]; *Amos* v. *Prom* (N.D.Iowa 1953) 115 F.Supp. 127, 133; *Curnett* v. *Wolf* (1953) 244 Iowa 683 [57 N.W.2d 915]; *Odom* v. *East Ave. Corp.* (1942) 178 Misc. 363 [34 N.Y.S.2d 312]; cf. *Guillory* v. *Godfrey, supra* (1955) 134 Cal.App.2d 628, 633.

Plaintiff contends that his right to remain in Anbro's employ was an "advantage" or "privilege" protected from discrimination under section 51. Although this court has held that the term "business establishments" in section 51 was used in the "broadest sense reasonably possible" (*Burks* v. *Poppy Constr. Co.,* 57 Cal.2d 463, 468-469 [20 Cal.Rptr. 609, 370 P.2d 313]), it is doubtful that the Legislature intended these sections to apply to discrimination in employment. The broad language of section 51 was adopted after several court decisions placed an unduly restrictive interpretation upon the former phrase "places of public accommodation or amusement" in the predecessor section to section 51. (See Horowitz, *The 1959 California Equal Rights in "Business Establishments" Statute—A Problem in Statutory Application* (1960) 33 So.Cal.L.Rev. 261, 272-276; Colley, *supra,* fn. 3, at pp. 190-194. ■ However, there is no indication that the Legislature intended to broaden the scope of section 51 to include discriminations other than those made by a "business establishment" in the course of furnishing goods, services or facilities to its clients, patrons or customers. (See Horowitz, *supra,* at pp. 288-289, 294.)

This conclusion is substantiated by the fact that at the same session wherein it adopted the language of section 51, the Legislature also enacted extensive provisions governing discrimination in employment. The Fair Employment Practices Act. (Lab. Code, § 1410 et seq.) declares that the opportunity to seek, obtain and hold employment without discrimination is a civil right (Lab. Code, § 1412), and provides for administrative procedures for relief from such discrimination, "including (but not limited to) hiring, reinstatement or upgrading of employees, with or without back pay . . . ." Lab. Code, § 1426.)[7]

■ Although the Fair Employment Practices Act can not be deemed to have repealed any provisions of the Civil Rights Act (see Lab. Code, § 1432), we conclude that the concurrent enactment of the former act indicated a legislative intent to exclude the subject of discrimination in employment from the latter act. Consequently, defendants' demurrer to plaintiff's second cause of action was properly sustained.

The judgment of dismissal of the second cause of action is affirmed. The judgment of dismissal of the first cause of action is reversed, and the

---

[7]Apparently, plaintiff waived his FEPA rights in favor of union arbitration.

trial court is hereby instructed to overrule the demurrer and allow defendants to answer.

Mosk, Acting C. J., McComb, J., Peters, J., Tobriner, J., and Sullivan, J., concurred.