[Civ. No. 66721. Second Dist., Div. Four. June 22, 1983.]

PETER E. KISESKEY et al., Plaintiffs and Appellants, v. CARPENTERS' TRUST FOR SOUTHERN CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Boies & O'Rourke, Ronald K. Miyamoto and Jeffery D. Palumbo, for Plaintiffs and Appellants.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup and Robert L. Washburn for Defendants and Respondents.

---

## OPINION

**McCLOSKY, Acting P. J.**—Plaintiffs Peter Kiseskey and Susan Kiseskey appeal from an order of dismissal entered after the general demurrer of Carpenters Local Union No. 1506 to plaintiffs' fifth amended complaint (hereafter FAC) was sustained without leave to amend on the basis of the statute of limitations. (See Code Civ. Proc., § 340, subd. (3).)

By that FAC, Peter Kiseskey sought damages for the intentional infliction of emotional distress, and his wife Susan M. Kiseskey sought damages for loss of consortium.

In the first cause of action of the FAC, plaintiffs alleged, among other things, that Earl Mitchell, Douglas McCarron and others were "agents and/or employees" of respondents and others acting within the scope of their employment at the time of their tortious conduct toward plaintiffs. On or about October 17, 1977, November 20, 1977, and December 20, 1977, Douglas McCarron and certain Does called Peter Kiseskey and insulted him and threatened his life and health and that of his family, if he did not sign another agreement with the union.

The foregoing conduct of defendants, and each of them, was part of a continuous course of conduct which was intentional, outrageous, malicious and done with ill will on the part of the defendants, and each of them, done with the intent of causing plaintiff Peter Kiseskey to suffer humiliating mental anguish, and emotional and physical distress, and with knowledge that plaintiff Peter Kiseskey's emotional and physical distress would thereby increase. It alleged further that the foregoing conduct was in wanton and reckless disregard of the consesquences to plaintiff Peter Kiseskey.

It was further alleged that the conduct of defendants, and each of them, was so severe and outrageous that as a proximate result thereof plaintiff Peter Kiseskey suffered humiliation, mental anguish and emotional and physical distress, and was caused "to incur" a heart attack on January 9, 1978, as a result of which he was admitted to a hospital on that date where he remained until January 24, 1978.

Defendants, and each of them, since March 18, 1977, up to and including the present time, have constantly harassed and threatened plaintiff Peter Kiseskey.

He also sought punitive damages on the basis that all of defendants' aforesaid acts were intentional, wilful, wanton, malicious, outrageous, and done with ill will, evil motive and desire to harm.

In the second cause of action, Susan Kiseskey incorporated the foregoing allegations of her husband's cause of action and alleged that as a result of her husband's severe injuries which he suffered as a result of defendants' foregoing conduct, she has suffered and will continue to suffer a loss of consortium for which she seeks compensatory damages.

## CONTENTIONS

Plaintiffs contend that (I) an action for intentional infliction of emotional distress is governed by the one-year statute of limitations found in Code of Civil Procedure section 340, subdivision (3); (II) the statute of limitations does not commence to run until the cause of action accrues; (III) a cause of action ordinarily accrues when the party owning it is entitled to begin and prosecute thereon; (IV) a cause of action for emotional distress does not accrue until there exists outrageous conduct by a defendant resulting in severe or extreme emotional distress to the plaintiff; (V) whether a defendant's conduct is so outrageous and the plaintiff's distress so severe as to give rise to an action for emotional distress are questions of fact to be decided by a trier of fact and not by the court at the hearing on demurrer; (VI) the lower court erroneously, and to plaintiff's prejudice, sustained defendants' demurrer on the statute of limitations ground. This, they contend, is so because the questions of whether defendants' conduct was outrageous, and if so at which point plaintiff's emotional distress was so severe as to give rise to a cause of action for intentional infliction of emotional distress are questions of fact to be decided by a trier of fact; and (VII) the statute of limitations on a cause of action for loss of consortium is one year from the date of the injury giving rise to the action. Since plaintiff's second cause of action was filed within one year from the date of injury, the trial court committed prejudicial error in sustaining defendants' demurrer on the grounds of statute of limitations.

Defendants contend that (I) the plaintiffs on appeal cannot rely on allegations contained in the superseded complaints; but the allegations of those complaints can be held against them; (II) contrary to the plaintiffs' contention, a demurrer does not give contentions and conclusions alleged in a complaint the status of admitted facts; (III) the alleged acts by the defendants, even assuming that they occurred, did not proximately cause the injuries of the plaintiff Peter Kiseskey; (IV) the statute of limitations for an action for intentional infliction of emotional distress is one year, and it accrues at the time of the wrongful act; (V) even assuming for the sake of

argument, that the defendants' alleged acts did cause the plaintiff's heart attack, the cause of action for intentional infliction of emotional distress accrued when those acts led to Peter Kiseskey's emotional distress, not when that emotional distress was physically manifested some time later; (VI) plaintiffs' reliance on the case of *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38 [147 Cal.Rptr. 565], is misplaced; (VII) because Peter Kiseskey's injuries were not attributable to the acts of the defendants, Susan Kiseskey's cause of action for loss of consortium must fall because it is contingent upon Peter Kiseskey's cause of action; and (VIII) the acts alleged which did fall within one year of the filing of the plaintiffs' original complaint do not constitute emotional distress.

## DISCUSSION

### I

■ Ordinarily, a general demurrer should not be sustained unless the complaint liberally construed fails to state a cause of action on any theory. (*Brousseau* v. *Jarrett* (1977) 73 Cal.App.3d 864 [141 Cal.Rptr. 200]; *Cameron* v. *Wernick* (1967) 251 Cal.App.2d 890 [60 Cal.Rptr. 102] and Code Civ. Proc., § 452.) ■ Material facts alleged in the complaint are treated as true for the purpose of ruling on the demurrer. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].) Also taken as true are facts that may be implied or inferred from those expressly alleged. (*Harvey* v. *Holtville* (1969) 271 Cal.App.2d 816 [76 Cal.Rptr. 795].) However, contentions, deductions or conclusions of fact or law alleged in the complaint are not considered in judging its sufficiency. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566.) ■ In short, the ruling on a demurrer determines a legal issue on the basis of assumed facts, i.e., all those material, issuable facts properly pleaded in the complaint, regardless of whether they ultimately prove to be true. The complaint will ordinarily be upheld even though the facts are not clearly stated, or are intermingled with a statement of irrelevant facts. (See *Gruenberg* v. *Aetna Ins. Co., supra,* and also *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56, 66 [42 Cal.Rptr. 473].)

### II

Defendants contend that there are factual contradictions between the earlier complaints and the FAC which must be held against plaintiffs. ■ An amended complaint may be rendered defective by proof of attempted *suppression in it of destructive matter set forth in a superseded pleading.* Where the amended pleading attempts to avoid defects revealed in that prior pleading by ignoring those defects, the court may examine the prior com-

plaint or complaints to ascertain whether the amended pleading is merely a sham. We have examined the superseded complaints and compared the allegations in them with the allegations of the FAC. We find no factual contradiction between them and conclude that defendants' contention in this regard is without merit.

### III

■ *Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 296 [131 Cal.Rptr. 547], disapproved in part on other grounds in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 740-741, footnote 9 [180 Cal.Rptr. 496, 640 P.2d 115], certiorari denied, 459 U.S. 858 [74 L.Ed.2d 111, 103 S.Ct. 129], sets forth that "[t]he elements of a prima facie case of intentional infliction of mental distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress. (*Golden* v. *Dungan* (1971) 20 Cal.App.3d 295, 302-311 [97 Cal.Rptr. 577]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-498 [86 Cal.Rptr. 88, 468 P.2d 216]; *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330 [240 P.2d 282]; Rest.2d Torts, § 46.)"

### IV

■ There can be no question but that the FAC sufficiently alleged outrageous conduct. The FAC alleges, among other things, that on or about October 17, 1977, Douglas McCarron and others acting as "agents and/or employees" of respondent, within the scope of their employment telephoned Peter Kiseskey and stated "You are a no good son of a bitch and if you don't resign the agreement and get in set with the union, you'll be put in the hospital." It alleges that on or about November 20, 1977, Douglas McCarron and others telephoned Peter Kiseskey and said, "Rejoin the union or you might not live to regret it," and that on or about December 20, 1977, Douglas McCarron and others telephoned Peter Kiseskey and said "Since you do not seem to be concerned about your safety and well-being, maybe you will be concerned about the well-being of your wife and children."

Each of these statements taken alone, or considered together as part of a course of conduct, needs no delicate weighing in order to conclude that it constitutes outrageous conduct. "The modern rule is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental dis-

tress. (See Prosser, Law of Torts (4th ed. 1971) p. 54.) Ordinarily mere insulting language, without more, does not constitute outrageous conduct. The Restatement view is that liability 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . There is no occasion for the law to intervene . . . where some one's feelings are hurt.' (Rest.2d Torts, § 46, com. d.) Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." (*Newby* v. *Alto Riviera Apartments, supra,* 60 Cal.App.3d at p. 297.)

The threats alleged in this case do not constitute mere violations of the niceties of polite conversation. They constitute outrageous conduct intended to inflict emotional distress in order to compel behavior through threats of physical violence or death, which our law wisely proscribes.

### V

The complaint alleges that McCarron was the agent and/or employee of the defendant and the other defendants, acting within the course and scope of that employment at all times mentioned in the complaint.

The general allegation of agency is one of ultimate fact, sufficient against a demurrer. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading § 722, p. 2387; see also *Skopp* v. *Weaver* (1976) 16 Cal.3d 432, 437 [128 Cal.Rptr. 19, 546 P.2d 307].) We accordingly conclude that plaintiffs' allegations of agency and that the acts of the agents committed within the scope of agency and employment are sufficient with respect to the right to recover compensatory damages. We separately discuss below plaintiffs' right to recover punitive damages.

### VI

With respect to the second element of the tort, i.e., intention to cause or reckless disregard of the probability of causing emotional distress, factual allegations of the threats made to Peter Kiseskey concerning his health and that of his family in the manner in which they were made, constituted more than a sufficient allegation of that element.

### VII

Were sufficient facts alleged in the FAC to satisfy the third and fourth elements of the tort, and if they were, when did the cause of action actually accrue so as to commence the running of the statute of limitations?

"The right to recover damages for the intentional infliction of mental distress which results in physical injury has long been recognized in California. (*State Rubbish etc. Assn.* v. *Siliznoff, supra,* at pp. 336-337; *Richardson* v. *Pridmore* (1950) 97 Cal.App.2d 124, 130 [217 P.2d 113, 17 A.L.R.2d 929]; *Emden* v. *Vitz* (1948) 88 Cal.App.2d 313 [198 P.2d 696].) The right to recover for emotional distress alone in situations involving extreme and outrageous conduct has also been acknowledged. (*State Rubbish etc. Assn.* v. *Siliznoff, supra,* at pp. 337-338; *Fletcher* v. *Western National Life Ins. Co., supra,* at p. 397; *Golden* v. *Dungan, supra,* at p. 305; Prosser, Law of Torts (4th ed. 1971) p. 60; Rest.2d Torts, § 46.)" (*Newby* v. *Alto Riviera Apartments, supra,* 60 Cal.App.3d 288, 296.)

Defendants contend that plaintiff Peter Kiseskey's cause of action accrued, at the latest, when he received the last phone call from McCarron on or about December 20, 1977. Since the original complaint was not filed until January 8, 1979, defendants urge that plaintiffs' causes of action are therefore barred by the one-year statute of limitations provision of Code of Civil Procedure section 340, subdivision (3).

■ "[T]o state a cause of action for intentional infliction of emotional distress the plaintiff is required to show *severe* emotional distress resulting from *outrageous* conduct on the part of the defendant. (*Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 394, 396-397 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) Both the intensity and duration of the emotional distress suffered must be considered in determining its severity. Severe emotional distress means 'emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it.' (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal. App.3d at p. 397.)" (*Murphy* v. *Allstate Ins. Co., supra,* 83 Cal.App.3d 38, 51; italics in original.)

It is clear that a mere momentary or transitory emotional distress is insufficient to constitute severe emotional distress.

■ The FAC alleges that "Defendants', and each of them, conduct [*sic*] was so severe and outrageous that on January 9, 1978, plaintiff was caused to incur a heart attack . . . ." While that language may not ennoble the English language, it does, when coupled with the other allegations of that pleading, constitute an adequate allegation of severe emotional distress and the requisite causation.

Without even considering plaintiffs' allegations that the phone calls were but a part of the continuous course of conduct of intentional harassment of plaintiff Peter Kiseskey, which continued right up to the date of the filing

of the FAC, we conclude that the facts alleged in that complaint are sufficient to state a cause of action which accrued on January 9, 1978, the date of the heart attack.

Illustrative of the importance of the word "severe" as used to modify the term "emotional distress" is the case of *Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163 [136 Cal.Rptr. 275]. In that case defendant contractor undertook construction work on plaintiffs' home which necessitated removal of a portion of the roof. Despite weather reports indicating rain, and phone calls after the rain started, that defendant contractor failed to take protective measures, as a result of which failure plaintiffs' building, furniture and personal effects were damaged. Plaintiffs received a verdict for this damage to property and also for emotional distress. The appellate court modified the judgment by eliminating the award of damages for emotional distress, holding that the testimony of plaintiffs that they were "upset" and "disturbed" and "furious" did not meet the requisite test. (*Fuentes* v. *Perez, supra,* 66 Cal.App.3d at pp. 170, 172; see also *Cortez* v. *Macias* (1980) 110 Cal.App.3d 640, 652, 653 [167 Cal.Rptr. 905], (following *Fuentes*); 4 Witkin, Summary of Cal. Law (8th ed. 1982 supp.) Torts, § 235, p. 113.)

Defendants urge that the tort was complete with the completion of the wrong complained of. They cite *Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771 [247 P.2d 133], in support of their contention. *Sonbergh* is inapposite. It involved an assault and battery. The tort of assault or battery is complete at the latest when the touching takes place. Physical injury is not a required element of either assault or battery. The tort of assault is complete when the anticipation of harm occurs. (See *Sonbergh, supra,* at p. 774.) ■ The rule is otherwise with the tort of intentional infliction of emotional distress. It is not complete until the effect of a defendant's conduct results in plaintiff's *severe* emotional distress. That is the time the cause of action accrues and starts the statute of limitations running. This requisite severity of emotional distress, in turn, must be determined by being "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 397.)

While it may subsequently be determined that the effect of defendants' conduct became sufficiently severe so that plaintiffs' cause of action accrued before January 9, 1978, that is a question of fact for the trier of fact, not for determination at the demurrer stage, where the facts alleged must be taken as true for the purpose of ruling on the demurrer. Should it later be determined by a trier of fact that Peter Kiseskey was experiencing severe emotional distress before January 9, 1978, then, of course, the causes of

action of both plaintiffs will be barred by the one-year statute of limitations provided by Code of Civil Procedure section 340, subdivision (3).

We accordingly hold that the FAC states facts sufficient to constitute a cause of action for intentional infliction of emotional distress as to Peter Kiseskey.

## VIII

Unless there are only undisputed facts from which only one conclusion can be drawn, proximate cause, too, is a question of fact not to be determined at the demurrer stage. (*Warner* v. *Santa Catalina Island Co.* (1955) 44 Cal.2d 310, 316 [282 P.2d 12].)

## IX

■ As the facts alleged are sufficient to constitute a cause of action in Peter Kiseskey, they are also sufficient to support Susan Kiseskey's cause of action for loss of consortium which had its genesis in, and accrued at the time of, Peter Kiseskey suffering *severe* emotional distress. (See *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408 [115 Cal.Rptr. 765, 525 P.2d 669] and *Brittell* v. *Young* (1979) 90 Cal.App.3d 400, 407, fn. 5 [153 Cal.Rptr. 387].)

## X

Defendants also contend that "the National Labor Relations Board (NLRB) has exclusive jurisdiction over all actions which are arguably protected or prohibited by the Labor Management Relations Act, 29 U.S.C. sections 157, 158." They cite *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 244 [3 L.Ed.2d 775, 783, 79 S.Ct. 773], for the proposition that "[t]o allow the States to control conduct which is subject to the national regulation would create potential frustration of national purposes." We agree with both of these general principles but find them inapposite as we do not ground our holding on defendants' alleged conduct occurring after January 9, 1978, which allegedly consisted of unsuccessful attempts to contact Peter Kiseskey in the hospital and successful attempts to have two of his employees quit his employ.

## XI

■ We turn next to a consideration of whether plaintiff's right to punitive or exemplary damages is adequately pled in the FAC. In addition to the factually pled threatening phone calls, plaintiff Peter Kiseskey alleged

that that conduct of defendants, and each of them, was intentional, outrageous, malicious, and done with ill will, with the intent to cause plaintiff, Peter Kiseskey, to suffer humiliating mental anguish and emotional and physical distress, with the knowledge that his emotional and physical distress would thereby increase, and with a wanton and reckless disregard of the consequences to plaintiff Peter Kiseskey. Plaintiff further pled that "[t]he aforementioned acts of defendants, and each of them, were willful, wanton, malicious, outrageous and done with ill will, a desire to do harm to the plaintiff, and evil motive, and a conscious disregard of the rights of the others and justify the awarding of exemplary and punitive damages in the amount of $5,000,000.00."

In *Brousseau* v. *Jarrett, supra,* 73 Cal.App.3d 864, 872, an allegation that defendant engaged in conduct "intentionally, willfully, fraudulently, and with a wanton, reckless disregard" of consequences was held insufficient to support a demand for punitive damages as merely the conclusionary characterization of defendant's conduct. But as "[t]he test for allegations of fact or conclusions of law is not absolute; the question is whether the pleading as a whole apprises the adversary of the factual basis of the claim. (28 C.A.3d 721.)" (3 Witkin, Cal. Procedure (2d ed. 1983 supp.) Pleading, § 268, p. 149, citing *Semole* v. *Sansoucie* (1972) 28 Cal.App.3d 714, 719 [104 Cal.Rptr. 897].)

While pleading a "wilful" failure to do something does not amount to pleading that a defendant acted with the requisite wrongful personal intent to injure or in reckless disregard of a plaintiff's rights, when coupled with the factual allegations of the alleged actual language of the telephone threats of bodily harm or death, we hold that the allegations of the FAC are sufficient in that regard.

## XII

We turn next to the sufficiency of the allegations by which plaintiff seeks to assess punitive damages against defendant local for the conduct of Mr. McCarron and certain enumerated Does.

"In a broad sense, it is correct to state that California follows the Restatement rule regarding assessment of punitive damages against a principal: 'Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the

act.' (Rest.2d Torts (Tent. Draft No. 19, 1973) § 909.)'' (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822 [169 Cal.Rptr. 691, 620 P.2d 141], app. dism. and cert. den. (1980) 445 U.S. 912 [63 L.Ed.2d 597, 100 S.Ct. 1271].)

The FAC alleges that the persons making the threatening phone calls were the "agents and/or employees of their co-defendants CARPENTERS and/or LOCAL 1506 and/or Does XI through XX and in doing the things hereinafter alleged were acting within the course and scope of such agency and the permission and consent of their co-defendants.''

That language sufficiently alleges that the threatening phone calls were made by "agents and/or employees" of defendant, "acting within the course and scope of said agency.'' The more difficult question is whether it constitutes a sufficient allegation that defendant, the principal, " 'authorized the doing and the manner of the act' " or " 'ratified or approved the act.' " (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 822.)

As to whether the words "permission and consent" constitute a sufficient allegation that the principal authorized or approved the doing and manner of the acts, we turn to Webster's Third New International Dictionary (1961) for assistance. That work defines the word "permission," among other definitions, as "the act of permitting: formal consent: AUTHORIZATION." (*Id.,* at p. 1683.) It defines the word "consent," among other definitions as "compliance or approval esp. of what is done or proposed by another: ACQUIESCENCE, PERMISSION, capable, deliberate, and voluntary agreement to or concurrence in some act or purpose implying physical and mental power and free action." (*Id.,* at p. 482.) It defines the word "authorize," among other definitions, as "to endorse, empower, justify, or permit by or as if some recognized or proper authority: sanction." (*Id.,* at p. 146.)

We accordingly conclude that the conclusional words "permission and consent" used in the FAC, coupled with the factual allegations therein, constitute an allegation, sufficient if proven, upon which punitive damages may be assessed against defendant for the conduct of its agents.

The judgment (order of dismissal) is reversed.

Ackerman, J.,* and Lachs, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 18, 1983. Mosk, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.